## McTaggart et al. *versus* Thompson et al.

1. Where a testator has devised his real estate in fee, a mortgage afterwards executed by him to the devisee, upon the estate devised, payable after the death of the testator, is not an absolute revocation of the devise, but is a revocation merely *pro tanto.*

2. Declarations of a testator, though made after the execution of his will, are admissible as evidence of imbecility of mind.

3. It is not necessary, in order to set aside a will, that *derangement* of intellect be proved.　Imbecility of mind, short of insanity, is sufficient for that purpose.

4. A will may be set aside for a less degree of insanity in the testator, than is necessary to be proved in order to acquit him of a crime or misdemeanor.

5. The subscribing witnesses to a will are not always the best to prove the sanity of the testator.

6. In a case involving a question of sanity or insanity in a testator, the facts in evidence ought not to be presented to the jury in an isolated manner, but should be submitted as a connected whole.

ERROR to the Common Pleas of *Allegheny county.*

This was a feigned issue directed by the Register's Court to the Court of Common Pleas of Allegheny county, to try the validity of the will of James Thompson.　In the issue, James Thompson, and Robert Thompson, *who were in favor of the will,* were plaintiffs, and Elizabeth McTaggart and others, were defendants.　The issue was tried before M'CLURE, J., and a verdict was rendered in favor of the plaintiffs.

On the trial, the will of James Thompson was read in evidence on the part of the plaintiffs.　On the part of defendants below, the will was attempted to be invalidated on the grounds that the testator was not of sound and disposing mind, and, secondly, that the paper purporting to be the will was procured by duress and constraint. It was also insisted on that it was revoked by the execution, by testator, of certain mortgages to the devisees, on the two tracts of land devised to the plaintiffs in the issue, James and Robert Thomp-

N 2

[McTaggart et al. *v.* Thompson et al.]

son, who were sons of the testator. It was insisted on the part of defendants below, that these mortgages were an implied revocation of the will. The will was dated on the 8th day of March, 1844. In it he stated, "As to my temporal personal property, I have none: age and misfortune have divested me of that species of property. With respect to my real estate, I order and direct that all my debts and legacies be paid out of the rents, issues and profits of my real estate." To his son, James Thompson, he devised "the tract of land on which he resided, &c., to him and his heirs forever, to have and to hold free and clear of all encumbrance, except my debts and legacies hereinafter bequeathed." To his son Robert, he devised another tract, "free, and clear of all encumbrance except my debts and bequests herein mentioned, and my funeral expenses, and whatever liabilities hereafter I may create by decease or privately. My liabilities, my funeral expenses, the costs of executing this my last will and testament, and the bequests, shall be paid by my sons, James Thompson and Robert Thompson, as tenants in common equal shares, share and share alike."

He devised small legacies to others of his children.

The defendants, to prove an implied revocation of said will, gave in evidence two mortgages on the two tracts devised to the plaintiffs, dated 17th of April, 1848, acknowledged the same day and recorded at the same time, in vol. xvi. p. 31, &c. One of the mortgages was given to James Thompson, one of the devisees, to secure payment of a penal bill of testator to devisee, of same date, conditioned for the payment of $3160 one year after the death of the testator. The other was given to Robert, the other devisee, to secure the payment of a penal bill of testator to the said devisee, of same date, conditioned to pay said devisee $2319 one year after the death of testator.

The proviso in the mortgage was as follows: "Provided always, nevertheless, that if the said James Thompson, sen., his heirs, executors, administrators and assigns, the aforesaid debt of (the sum) with interest on the same, on the day and time hereinbefore mentioned and appointed for payment thereof, to wit: in one year after the decease of the said James Thompson, sen., without any fraud, &c., "then," &c.

The defendants also proved that the testator died in August, 1848, seventy-five years of age, and that the plaintiffs and defendants were his children; that he had assigned to the plaintiffs before the date of his will, his large personal estate, and that the lands devised to the plaintiffs were worth about $25,000.

There was no evidence as to duress, but after the paper purporting to be the will, as proved before the register and the probate, was read by plaintiffs, the defendants gave evidence, by witnesses, tending to prove the insanity of the testator as early as 1803, and of his being subject all his life to morbid violence of temper, and

consequent melancholy, amounting to unsoundness of mind; that in the opinion of some he was never of sufficient soundness of mind to make a will, and of others that he was occasionally so; that he had unreasonable prejudices and dislikes, especially against his children, the defendants, and his wife, and that he labored under morbid delusions, and quarrelled without cause with his wife and daughters; his morbid irritability and singular habits, his transacting little or no business except through his sons, and his weeping without any adequate motive; that age and misfortunes had not deprived him of his personal property, as stated in his will, but that he had large real and personal property, and was always prosperous in his estate; that his wife was prudent, virtuous, and industrious; that his children, the defendants, were obedient, and had not displeased him; that they never had opposed him, &c.

To rebut the evidence on the part of defendants, evidence was given on the part of the plaintiffs.

During the progress of the trial, the defendants, for the purpose of showing the state of the testator's mind, offered to prove declarations of the testator as to the disposition of his property—that he had ruined his family, and that he had been deceived and imposed on by persons who had procured him to have his will made; and all this after the will had been executed.

The offer is overruled, to which appellant's counsel excepted.

On the part of the defendants below, a number of points were propounded to the court.

As to the evidence of sanity, the judge, in his charge, observed, *inter alia :* "If James Thompson were alive and on trial before you for a crime or misdemeanor, that perilled his liberty or life, under the testimony you have heard, would you acquit him upon the plea of insanity, or would you not ?"

As to the testimony of the subscribing witnesses, he observed: "Do you believe the witnesses to the will, who are all alive, and whose testimony you have heard? Do you believe them, or do you not? If their testimony is uncontradicted, and their presence and demeanor demanded your respect and belief, then there is an end of the case again."

The judge also commented on a number of the facts, which were alleged, in connexion with each other, to evidence insanity or imbecility of mind in the testator.—See the opinion of his Honor Judge ROGERS.

A verdict was rendered for plaintiffs, as stated before.

Errors were assigned to the charge, some of which were :

That the execution of the mortgages by the testator was not an implied revocation of the will.

In the answer to several of the points.

[McTaggart et al. *v.* Thompson et al.]

In not placing the question of law arising in the cause fairly and clearly before the jury.

In stating the law to the jury, that the degree of insanity which would acquit a culprit of a criminal charge, is the criterion of sanity in the testator.

In saying to the jury, that the only question is, was the testator crazy when he made his will.

That the testimony of the witnesses to the will is most to be relied on, as establishing testator's soundness of mind.

In rejecting the testimony as stated in the bill of exceptions of the defendants below.

The case was argued by *Dunlop*, for plaintiffs in error.
By *Hamilton*, for defendants in error.

The opinion of the court was delivered, October 14th, by

Rogers, J.—This is the case of a feigned issue, directed by the Register's Court to the Common Pleas of Allegheny county, to try the validity of the will of James Thompson.

The will is questioned on several grounds: That it is revoked by the execution of certain mortgages to two of the devisees; that the testator was not of sound disposing mind and memory; and that it was obtained by duress, coercion, or restraint. We are relieved from a consideration of the last exception, as it was neither insisted on in the Common Pleas, nor is it urged here. Our attention has been directed to the question of revocation, to the exclusion of certain testimony as to the capacity of the testator to make the will, and the charge of the court.

The question of revocation depends on the execution of certain mortgages by the testator to his devisees, James and Robert Thompson, to secure the payment of certain debts, payable one year after the death of the testator. This, it is contended, is a total revocation of the will; whilst, on the other hand, it is insisted to be at most but a revocation *pro tanto*, only. It is a rule of law too firmly settled to be now shaken, that when an estate has been altered, or new modelled since the execution of the will, it is a revocation, on the legal presumption that such was the intention. Nay, the direction has been carried to such an extent, as that not only conveyances, or contracts to convey, but inoperative conveyances will amount to a revocation of a devise, to the extent of the property intended to be affected, if there be evidence of an intention to convey, and thereby to revoke the will. But although this is the undoubted rule, yet the exception is equally well settled, that mortgages and charges on the estate are only a revocation in equity, *pro tanto*, or *quoad* the special purpose; they are taken out of the general rule, on the fact of being securities only. A mortgage, though in form purporting to be a conveyance of the

[McTaggart et al. *v.* Thompson et al.]

estate, yet in equity always, and now at law, is regarded but as a security for a debt. It, therefore, does not contravene the general rule of revocation, it is not to be viewed as an alteration or change of the estate. It is but a revocation *pro tanto*, or, as Mr. *Jarman* chooses to say, an ademption, rather than a revocation of the will. And thus far the rule; and the exception, if not admitted, cannot be plausibly denied.

The defendant, however, contends that there is a distinction, where the mortgagee is the devisee, and where he is a stranger; that in the former case, it is a revocation *in toto*, in the latter, *pro tanto* only. For this distinction the defendant relies on Harkness *v.* Bayley, *Precedents in Chancery* 514, and the earlier elementary treatises. See 2 *Eq. Cas. Ab.* 772; *Cruise's Dig.* title *Devises* 124; *Roper on Wills* 22; *Lovelass on Wills* 165; *Gilbert on Devises* 111; 7 *Bacon's Ab.* title *Wills* 267, where the authority of Harkness *v.* Bayley is recognised or passed without question. The case, however, of Harkness *v.* Bayley, is expressly overruled in Baxter *v.* Dyer, 5 *Vesey, Jr.* 656, in which the distinction between a devisee and a stranger is expressly exploded. It is there decided, that a devise is not revoked by a mortgage in fee to the devisee. Indeed, it is difficult to perceive any principle on which the distinction is founded, inasmuch as the doctrine of revocation, as has been heretofore said, is based on the fact of the alteration of the estate, which is thought to be a legal indication of the intention of the testator to revoke the devise. But as it is, in equity, but a revocation *pro tanto*, in the one case, there is no reason that I can perceive, for holding it to be a total revocation in the other. Whatever it may have been formerly, when the case of Harkness *v.* Bayley was decided, a mortgage now is not, either in law or equity, any thing more than a security for a debt, which neither alters the estate, nor does it evince any intention to alter it. In Baxter *v.* Dyer, Lord ELDON says, that Harkness *v.* Bayley was not the case of a mortgage. If this be so, and we have no better authority than Lord ELDON, whose great accuracy and research is universally admitted, the distinction is not supported either on principle or authority. Nor is it perceived that the postponement of the payment until after the death of the testator, can make any difference. There is still no alteration of the estate or intention to alter, on which alone the doctrine of implied revocation depends. Although I agree with the decision of the court, it is not, as will be observed, for the reasons given by the judge. On this point, the law of England and this State, is, in principle, the same, with perhaps some modification of the English rule, which holds an act to be a revocation, when it was not so intended, and even when the intention was directly the contrary. These questions will be met and be decided, as they arise, untrammelled by express adjudications.

For the purpose of showing testator's state of mind, the defend-

[McTaggart et al. *v.* Thompson et al.]

ants offered to prove declarations of the testator after execution of the will, as to the disposition of his property; that he had ruined his family, and that he had been deceived and imposed on by persons who procured him to make his will. It is expressly ruled in Rambler *v.* Tryon, 7 *Ser. & R.* 94, and in Chess *v.* Chess, 1 *Pa. Rep.* 16, that the declarations of a testator, although after the execution of the will, are evidence of imbecility of mind. Thus in Rambler *v.* Tryon, the party was permitted to prove declarations of the testator, that his wife and father plagued him to go to Lebanon; that they wanted him to give her all, or he would have no rest; that he did not want to go to Lebanon. This evidence was admitted, because, as the court say, it is evidence of weakness of mind, operated upon by excessive and undue influence. The court appear to have excluded the testimony, because they chose, contrary to the offer, to suppose it was designed to prove duress, for which purpose it would be clearly inadmissible. But the court had no right to act on the supposition that the testimony was proposed in bad faith. As it was offered for a legitimate purpose, for that purpose it ought to have been received. If attempted to be used for a different purpose, the correction was in their own hands; the counsel would subject themselves to the severest censure. If the facts were as represented, it is evidence of imbecility of intellect, amounting almost to fatuity. The remark of the court, when excluding the testimony, plainly shows this; as nothing can indicate more clearly weakness of mind, than complaining of that which he could so easily remedy by burning the will.

But the case ought not only to be reversed for the reasons already given, but because of several exceptionable points in the charge. From the remarks made by the court, the jury were induced to believe that unless they found the testator, in the language of the judge, "crazy," he had the requisite capacity to make a valid will. But it is not requisite that such derangement of intellect should be proved, to authorize the jury to set the will aside. Imbecility of intellect, though short of insanity, has been held sufficient for that purpose. This is a principle too plain to need the aid of authority.

The court put it to the jury to say, in the language of the judge, if James Thompson, the testator, was alive, and on trial before the jury for a crime or misdemeanor that perilled his liberty or life, under the testimony you have heard, would you acquit him on the plea of insanity, or not? That is certainly not the criterion; for less evidence would justify a jury in setting aside a will, than would be required to convict a person charged with murder or manslaughter: Commonwealth *v.* Mosler, 6 *Pa. Law Journal*, No. 11, p. 90, &c.

It will be readily conceded, that the testimony of the subscribing witnesses to the will is entitled to great respect, and, in the

[McTaggart et al. *v.* Thompson et al.]

absence of countervailing proof, is decisive; but the court has attached rather more importance to the testimony here, than the facts warranted. As is said in Irish *v.* Smith, 8 *Ser. & R.* 581, and Rambler *v.* Tryon, 7 *Ser. & R.* 72, the subscribing witnesses are not always the best to prove the sanity of the testator. Of this, several striking cases are given in the cases cited.

In addition, the defendants have just reason to complain of the one-sided character of the charge. It is objectionable, because it resembles the argument of the advocate, rather than the impartial survey of the judge, presenting detached parts of the evidence to the jury, with ludicrous and unfavorable comments, instead of submitting the testimony to them as a connected whole. Although isolated facts may of themselves prove but little, yet, taken together, they sometimes present overwhelming evidence of imbecility and derangement of mind. Of the benefit of this, the defendants were deprived by the charge of the court.

Judgment reversed and *venire de novo* awarded.