## HUNTER v. BATTIEST et al.

No. 11074—Opinion Filed Aug. 10, 1920.

Rehearing Denied Oct. 12, 1920.

(Syllabus by the Court.)

**1. Wills—Probate—Contest—Findings—Evidence—Review.**

In a contest on the probate of a will the presumption is in favor of the findings of the trial court, and they are entitled to the approval of this court unless shown to be against the weight of the evidence.

**2. Same—Questions of Fact—Testamentary Character of Instrument—Intent.**

Whether the instrument offered for probate as a will is testamentary in character is a question of fact, and whether the deceased intended the instrument offered for probate to operate as his last will and testament is a question of fact, to be determined from a consideration of the facts and circumstances in evidence in the case.

**3. Same—Testamentary Capacity.**

Testamentary capacity, or the lack thereof, is a question of fact, to be determined from the evidence in each particular case.

**4. Same — Determination—Findings — Review.**

There is no rule by which it may be determined, with precision, where capacity ends and incapacity begins. But this question should be determined from all the facts and circumstances of each particular case; and, where the evidence fairly and reasonably supports the findings of testamentary incapacity, the same will not be disturbed on appeal.

**5. Same — Undue Influence — Presumption from Relation of Attorney and Client.**

Where one stands in the relationship of attorney to the testator at the time the will is made, and is also the principal beneficiary under the will, the fiduciary relationship being of the highest trust, the law indulges in the presumption that undue influence was used to procure the will, and the burden is on such beneficiary to show the contrary.

**6. Same—Capital Cases.**

The relationship of attorney and client begets the most unlimited confidence, and in a capital case, the fiduciary relation and the opportunity for undue influence are sufficient to cast suspicion upon a bequest made to the attorney by his client, and such bequest will be more readily set aside than in civil cases or in criminal cases of a less serious nature.

**7. Same—Suggestions by Attorney—Effect.**

While mere suggestions or requests of disinterested parties to a testator would not constitute undue influence, the slightest suggestion of one bearing the confidential relation of attorney to a testator, especially where such attorney is the beneficiary under the will, might constitute undue influence.

**8. Same—Attorney as Beneficiary—Presumptions.**

In transactions inter vivos where one stands in the confidential relation of attorney to another, if the attorney receives benefits during the existence of such relation, a presumption of law arises that the benefits were the result of undue influence; and in testamentary dispositions of property the rule as to the legal presumption of undue influence is the same as in dispositions inter vivos, except that the attorney standing in confidential relation to the testator and receiving benefits under the will must be shown to have in some way actively participated in the preparation of the will or the disposition of the property.

**9. Same—Rebutting Presumption — Burden of Proof.**

Where the legal presumption of undue influence has arisen by showing confidential relations in the disposition of property by will, the burden of proof is upon the party seeking to take the benefit of such disposition to rebut the presumption attached thereto, by showing either that there has been a severance of the confidential relations, or that the party making the disposition had competent independent advice in regard thereto, and was free from the influence of the attorney at the time the will was made.

**10. Attorney and Client—Presumption of Fidelity—Gifts and Devises to Attorney—Burden of Proof.**

The law presumes that an attorney will so act and will so conduct himself as to leave not even a shadow of suspicion that he has done anything to place his personal interests in conflict with those of his client. If he has done so and has thereby secured an advantage over his client or a gift or devise from his client, the burden is doubly great of showing that such advantage or such gift or devise was not obtained through undue influence.

Error from District Court, Choctaw County; A. A. McDonald, Judge.

S. M. Cunningham, J. H. Warren, and Turner & McAdams, for plaintiff in error.

Jordan & Burke, for defendant in error Osborne Battiest.

Dickson & Carter and Ames, Chambers, Lowe & Richardson, for defendants in error Mose Roberts, Daniel Fisher, Mary Fisher, Sallie Fisher, and Pearl Fisher.

Petition by Tom Hunter for the probate of a certain instrument in writing as the last will and testament of Willie Fisher. Contest was filed by Osborne Battiest and others. Probate was denied, and proponent brings error. Affirmed.

KANE, J. On January 3, 1918, Tom Hunter filed in the county court of Choctaw

county for probate as the last will and testament of Willie Fisher the following instrument:

"September 17, 1917.

"Tom Hunter

"When I die I want you to take my body and bery Bery it by my father and mother in Spring Chapel Cemetery and after you have paid the expense of my funeral I give you all the balance of my property.

"J. E. Peltier.      Willie Fisher."

Contest was filed by Osborne Battiest et al., heirs at law of Willie Fisher. Probate on the instrument was denied by the county court and appeal was taken to the district court, whereupon a trial de novo the order and judgment of the county court was affirmed and the probate of the instrument as the last will and testament of Willie Fisher was denied.

The alleged will purports to devise to Hunter all the decedent's property, consisting of $2,000 or more in money in the hands of the United States Indian Agent and something like 1,500 acres of land in Choctaw county, Okla.

The facts as shown by the evidence and as found by the trial are as follows:

In the fall of 1915, Willie Fisher, a full-blood Choctaw Indian, 25 years of age, was arrested and confined in the county jail of Choctaw county on the charge of having murdered his father and mother. On the trial had in the following year he was found guilty of having murdered his mother and was given the death penalty. An appeal was taken to the Criminal Court of Appeals and Fisher was confined in the state penitentiary at McAlester. While an inmate of the state penitentiary he developed tuberculosis and died without final judgment having been rendered by the Criminal Court of Appeals. He was defended by the law firm of Cunningham & Hunter, which consisted of S. M. Cunningham and T. W. Hunter, the proponent, and in the early stages of the prosecution by Warren & Richardson, a firm consisting of T. J. Warren and G. W. Richardson, though apparently Richardson early dropped out of the defense.

During the time Fisher was confined in the county jail he executed a will in which he named two of his attorneys, T. W. Hunter and G. W. Richardson, as beneficiaries. After his conviction and while confined in the penitentiary he made a will naming proponent and his law partner, S. M. Cunningham, as beneficiaries. This will was dated June 7, 1917, and made under the following circumstances: Proponent received a telephone call from the warden of the penitentiary to come to McAlester. He thereupon prepared a typewritten will naming himself and his law partner, Cunningham, as sole beneficiaries and took this will with him to McAlester and the same was executed by Fisher in the presence of the warden and assistant warden of the penitentiary and was duly offered for probate October 29, 1917, 12 days after the death of Fisher, in the county court of Choctaw county. In support thereof the instrument recited herein and offered for probate in this case was attached to a deposition of one J. E. Peltier. The county court denied probate of this will of June 7, 1917, and an appeal was taken to the district court of said county. While the cause was pending on appeal in that court, the proponent, T. W. Hunter, detached the instrument herein and filed it with his petition in the county court asking that it be probated as the last will and testament of Willie Fisher, deceased. Before the hearing of this petition the said S. M. Cunningham caused to be dismissed in the district court the petition pending in the alleged will of June 7, 1917.

The testimony shows that when the first two wills were written Willie Fisher was in good health, but that some time prior to the time the will filed for probate herein was written the deceased developed tuberculosis and was confined to his bed in the hospital and was for a part of the time in the care of J. E. Peltier, a life-term convict. While he was in this condition he asked Peltier to write a letter to Hunter asking him to come to McAlester. In response to this letter Hunter came to the penitentiary on September 17, 1917. Fisher told him that when he died he wanted him to take his body and bury it by the side of his father and mother. Hunter told Fisher that in order for him to get his body out of the penitentiary it would be necessary for him to have a written order, and he also suggested that he should state what disposition he wanted made of his property. After that Hunter left the room for a few minutes and Fisher wrote on a piece of paper procured by Peltier the letter hereinbefore set forth, and when Hunter returned he handed it to him. Fisher died of tuberculosis October 12, 1917.

The trial court found that the deceased was a paranoiac, or insane person, with homicidal tendencies, and that while a paranoiac has lucid intervals, paranoia is an incurable form of insanity, which becomes worse with passing time; that the deceased was quarrelsome and sullen and ill-tempered and that he had been guilty of violent assaults without provocation, thereafter murdering his own father and mother; that the proponent and his associate counsel during the trial of the

deceased for murder filed a motion in the district court for a continuance for the reason that in their opinion Willie Fisher was insane, and the court further found as a matter of fact "that on the 17th day of September, 1917, the deceased was of unsound mind and incapable of making the will"; that the deceased was subject to undue influence of the proponent when the alleged will was made; that it was not the idea of the deceased or his beneficiary at the time the alleged will of September 17th, the instrument offered for probate herein as the last will and testament of Willie Fisher, was written that it was intended as a will, it having been written by the deceased at the suggestion of the proponent for the purpose of insuring that his remains would be delivered to proponent by the warden of the penitentiary; and denied the probate of the will. The ground urged for reversal of the judgment of the trial court is that this judgment is contrary to the law and the evidence.

This being an equitable action, the presumption is in favor of the findings of the trial court and they are entitled to the approval of this court unless shown to be against the weight of the evidence. Bilby v. Stewart, 55 Okla. 767, 153 Pac. 1173. The findings as to the issues submitted, being specific and embodied in the journal entry of judgment by virtue of sections 6211 and 6515, Rev. Laws 1910, must be taken as presumptive of the facts specifically set out, as much so as if made upon request of counsel for such findings.

The findings and conclusions which are necessary to be considered, and which will be discussed in the order named, are: (1) That the letter or instrument filed for probate was not intended as a will. (2) That the deceased was of unsound mind and without testamentary capacity when the alleged will was written. (3) That the execution of the alleged will was procured through undue influence of the proponent.

Whether the instrument is testamentary in character is a question of fact, and whether the deceased intended the will to operate as his last will and testament was a question of fact, to be determined from a consideration of the facts and circumstances in evidence in this case.

The trial court's finding is "that it was not the idea of the deceased or his beneficiary at the time the will of September 17th was written, that it was intended as a will; it having been written at the suggestion of the proponent for the purpose of insuring that his remains would be delivered to him by the warden of the penitentiary."

The testimony is that Fisher, believing that he was going to die, had Peltier write proponent a letter asking him to come to the penitentiary, and that after he came deceased told him that when he died he wanted proponent to take his body and bury it beside his father and mother, and that, upon being told by proponent that it would require a written order to get his body out of the penitentiary and that he should also state what he wanted done with his property, the deceased wrote the letter or instrument alleged herein to be his last will and testament. At the time deceased wrote this letter the will of June 7, 1917, was in the possession of proponent. This will was on its face a complete devise of all Fisher's property to proponent and his law partner, Cunningham. There had also been a will prior to that made to Hunter and Cunningham. This will of September 17, 1917, does not refer to any prior will or purport to revoke it. No reason is given for the failure to again mention Cunningham, who had also assisted in Fisher's defense, as a beneficiary under the will. The proponent himself on October 29, 1917, 12 days after Willie Fisher died, offered for probate the will of June 7, 1917, and attached the letter, or instrument, herein to a deposition filed with his petition as showing the intention of the testator to devise his property under the will of June 7, 1917, and not that of September 17, 1917. It was not until the will of June 7, 1917, had been denied probate in the county court that the proponent first indicated that he thought the will of September 17, 1917, was intended as a will. He can hardly complain, therefore, in the face of this evidence that the trial court found that the instrument offered for probate herein was not intended either by the deceased or his beneficiary as a will, but that it was written at the suggestion of the proponent for the purpose of insuring that his remains would be delivered by the warden of the penitentiary and would be buried by the side of his father and mother.

In White v. Deering (Cal.) 177 Pac. 516, in referring to a will where the testatrix had previously made a will, the court said:

"To give an instrument the effect of a last will, holographic in form, such as is the letter referred to, if anything in the nature of a testament, where there exists a previously made and unrevoked will of the testator, such instrument should be so phrased that there can be no doubt from its language that the intention of the testator was thus to make further testamentary provisions regarding the disposal of his estate—either that it was to explain, qualify, or modify certain provisions of his previously made will, or to make a different disposition of a part

of his estate from that made of it in the original testament."

It cannot be said that the trial court erred in finding that the deceased was of unsound mind and without testamentary capacity. Testamentary capacity, or the lack thereof, is a question of fact. Bilby v. Stewart, supra. There is no rule by which it may be determined, with precision, where capacity ends and incapacity begins. But this question should be determined from all the facts and circumstances of each particular case; and, where the evidence fairly and reasonably supports the findings of testamentary incapacity, the same will not be disturbed on appeal. Bilby v. Stewart, supra.

In the case at bar we are satisfied that the trial court would have been justified, from the evidence, in finding that Willie Fisher was hopelessly demented a sufferer from a most dangerous and degraded form of insanity. Proponent, on his trial for murder, represented that it was his belief that Fisher was insane, and urged this as a ground for continuance. No doubt the heinousness of the crime and the unexplainable and unexcusable and unnatural homicide robbed the defendant of that sympathetic consideration which juries usually give to cases where acts leading up to the taking of human life may have so unbalanced the reason of the defendant as to have prompted the deed. At any rate, the fact that the jury did not acquit Willie Fisher of murder on the ground of insanity does not prove that he was not lacking in testamentary capacity.

A less degree of mental disability is necessary to invalidate the will than would be ground of acquittal from a criminal charge. McTaggart v. Thompson, 14 Pa. 149.

But the fact that the testator suffered from chronic insanity is not in itself sufficient to prove testamentary incapacity. The proponent, the sole beneficiary in the will, must discharge the burden of proving that the deceased had testamentary capacity. To prove testamentary capacity it is held that it must be shown that the testator's mind and memory are sufficiently sound and that the testator has sufficient capacity to comprehend the condition of his property, his relation to the persons who would or should or might have been the objects of his bounty, and the scope or bearing of the provisions of his will. Alexander, Commentaries on Wills, vol. 1, p. 445, and cases cited.

Proponent has not discharged the burden cast upon him by reason of the insane acts of the testator of proving the testamentary capacity of the deceased. Gidney v. Chappel, 26 Okla. 737, 751, 110 Pac. 1100, 1105.

In Dickey v. Dickey, 66 Oklahoma, 168 Pac. 1018, this court held:

"When the testator, in making a will, understands the nature and consequence of his acts and is free from duress, menace, fraud, and undue influence, he has testamentary capacity."

The findings of the trial court that Willie Fisher was without testamentary capacity will not be disturbed.

Finally, we are of the opinion that the trial court's findings that the instrument offered for probate as a will was procured by undue influence is not contrary to the law and the evidence.

Where one stands in the relationship of attorney to the testator at the time the will is made, and is also the principal beneficiary under the will, the fiduciary relationship being of the highest trust, the law indulges in the presumption that undue influence was used to procure the will, and the burden is on such beneficiary to show the contrary. Gidney v. Chappel, supra; Alexander, Commentaries on Wills, vol. 2, p. 898.

The relationship of attorney and client begets the most unlimited confidence, and in a capital case there is every reason to presume that the slightest wish of the attorney would be granted. In civil cases and in criminal cases of a less serious nature the attorney may not take a gift from his client, and the courts hold such attempted gifts, while the relation is still subsisting, invalid. Pomeroy's Equity Jur. (4th Ed.) section 960.

If the fiduciary relation and the opportunity for undue influence are regarded as sufficient to void gifts made when the attorney is called upon to protect only the property or the liberty of his client, how much more should they shadow with suspicion a will made to an attorney after his client has been condemned to death and when the attorney alone stands between his client and the electric chair.

It seems unnecessary again to review the testimony or the facts hereinbefore set out. They are sufficient to presume undue influence and to negative a contention that the finding of undue influence on the part of the trial court is contrary to law and evidence. Why Willie Fisher, apparently from the time he was confined in jail charged with the crime of murder, for which his conviction seemed certain, began making wills to his attorneys cannot be satisfactorily explained from anything which appears in the record on any theory except that of undue influence. It is easy to conceive how a weak-minded Indian boy, confessedly guilty of murdering his parents, would be an easy victim of any

suggestion, however slight, made by his attorneys as to the disposition of his property.

The evidence shows that proponent, already twice the beneficiary in as many separate wills, when he asked the testator for an order to take his body from the penitentiary, suggested that he also state what disposition was to be made of his property. What else could be expected but that proponent should be again named as beneficiary, if Fisher had sufficient mental capacity to recall his former devises? If he did not have, how natural would it be for him to do the thing which would most likely insure the gratification of his last wish that he be buried by the side of his parents. The mere suggestion of proponent, at a time when he had in his possession the will of June 7, 1917, that Fisher should again state what disposition should be made of his property, is indicative of his expectation that Fisher would name him as the recipient of this property. How Fisher came to make the first will to his attorneys is not explained, and why proponent when he went to McAlester on June 7, 1917, carried with him a will prepared for execution making himself and his law partner sole beneficiaries is also not explained by any testimony offered in the record.

While mere suggestions or requests of disinterested parties to a person about to make a will would not constitute undue influence, the slightest suggestion of one bearing a confidential relation, such as attorney to a testator, and especially where the attorney is the beneficiary of the will, might constitute undue influence. At any rate, the burden would be on the attorney to prove that it was not undue influence, and this burden would not be discharged by a mere denial. Here the only witness to the alleged will is a convict, shown to be under obligation to the proponent and attorneys associated with him, and he cannot, therefore, be said to be a strictly disinterested witness. Nor is it necessary that the undue influence be exerted at the time of or immediately prior to the execution of the will. If the undue influence has once been exerted, it will be presumed to follow and taint every transaction between the parties thereafter, and such presumption of undue influence should be rebutted by disinterested witnesses.

In transactions inter vivos, where one stands in the confidential relation of attorney to another, if the attorney receives benefits during the existence of such relation, a presumption of law arises that the benefits were the result of undue influence, and in testamentary dispositions of property the rule as to the legal presumption of undue influence is the same as in dispositions inter vivos, ex-

cept that the attorney standing in confidential relation to the testator and receiving benefits under the will must be shown to have in some way actively participated in the preparation of the will or the disposition of the property. When the legal presumption of undue influence has arisen by showing confidential relations, whether in dispositions of property inter vivos or by will, the burden of proof is upon the party seeking to take the benefit of such disposition to rebut the presumption attaching thereto by showing either a severance of the confidential relations, or that the party making the disposition had competent and independent advise in regard thereto. Gidney v. Chappel, supra; McQueen v. Wilson (Ala.) 31 South. 94.

In Scattergood v. Kirk (Pa.) 43 Atl. 1030, it was held:

"Where testatrix, when 78 years old, made a will in which S., a cousin, was not a beneficiary, and, nine years after, S., through a tenant of the testatrix with whom testatrix was living, became an inmate of the house, and almost immediately assumed control of the house, attached herself to the person of testatrix, took charge of her money, became her companion and confident, and her adviser in affairs other than legal, soon went to her lawyer and had him draw a will for testatrix giving her half of the estate, and a month later had him draw a codicil giving it all to her, and there was evidence that testatrix was not exempt from the mental infirmities of extreme old age, and that she and the witnesses were not informed what they were signing, and that S. soon after entering declared that she meant to have everything, there is a presumption of undue influence; and the court should have charged that it was incumbent on S to show affirmatively that testatrix had advice independent of any from S., and that she had a full understanding of the papers."

The law also presumes that an attorney will so act and will so conduct himself as to leave not even a shadow of suspicion that he has done anything to place his personal interests in conflict with those of his client. If he has done so and has thereby secured an advantage over his client or a gift or devise from his client, the burden is doubly great of showing that such advantage or such gift or devise was not obtained through undue influence.

It might be said that in determining that undue influence was exercised in this case the court was guided by reasons of public policy and by considerations which relate to the protection of the client, to the due and orderly administration of justice, to the honor and purity of the profession, and to the dignity of the court itself. A will bequeathing all the property of a client to his attorney in

a capital case after the conviction of the client and his sentence to death, made while the appeal is pending, and received by the attorney with full knowledge of all the conditions, should be regarded with the greatest suspicion. It is absolutely inconsistent with the duty, burdens, and obligations which an attorney assumes when he enters into the relation of attorney and client, and, in fact, is subversive of them. To presume that such a will was made without undue influence and is therefore valid and effectual would be fraught with the most pernicious consequences both to the public and to the profession. It would give rise to most unscrupulous and unprofessional practice, and the rankest fraud could be perpetrated on unsuspicious and unfortunate clients.

In People v. Gerold, 265 Ill. 448, Ann. Cas. 1916A 636, 648, it is said:

"The rule has long been firmly established that an attorney cannot represent conflicting interests or undertake to discharge inconsistent duties. When he has once been retained and received the confidence of a client, he cannot enter the service of those whose interests are adverse to that of his client or take employment in matters so closely related to those of his client or former client as in effect to be a part thereof. (Weeks on Attorneys ]2nd Ed.| secs. 120, 271; 1 Thornton on Attorneys, sec. 174). This rule is a rigid one, designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties."

In discussing the relation of attorney and client where the client is an Indian, this court, in Barker v. Wiseman, 51 Okla. 645, 151 Pac. 1047, 1050, said:

"The government of the United States has been extremely generous in its efforts to provide for its unfortunate and dependent wards in the Indian Territory, and seemed to take every precaution to protect them from the rapacious schemes of their more intelligent neighbors; but, in spite of all that, a few designing, evil-minded schemers have diligently plied their artifices in every conceivable manner to defraud these ignorant, helpless people out of their lands. They naturally turn to men of our profession for protection. It is the duty of the lawyer to use every honorable means to assist them in such cases, and it does not look well, and is certainly not to the credit of the profession, for a lawyer to take advantage of their condition, or even enter into contracts with them at such times, for the purchase of their property. They should be above and stand aloof from it. In transactions of this nature, every presumption should be against the lawyer, and, where there is a question as to

the interpretation of such contracts, that construction which tends most strongly against the lawyer in the deal should be given."

We have carefully examined the evidence, and are of the opinion that the finding of the trial court that undue influence was exerted by the proponent is not contrary to the law or the evidence.

The testator was an Indian and a ward of the government, possessed of money in the hands of the Indian agency and of lands through his own allotment and through inheritance. His attorneys were amply protected as to their fees, and there appears no reason why they may not now through the proper procedure receive full remuneration for their services and for any moneys expended by them.

For the reasons stated, the order and judgment of the trial court are affirmed.

HARRISON, V. C. J., and PITCHFORD, JOHNSON, McNEILL, and RAMSEY, JJ., concur.