Shirley ROBERTS–DOUGLAS,
et al., Appellants,

v.

John L. MEARES, et al., Appellees.

EVANGEL TEMPLE, INC.,
et al., Appellants,

v.

Shirley ROBERTS–DOUGLAS,
et al., Appellees.

Nos. 89–CV–55, 89–CV–354.

District of Columbia Court of Appeals.

April 23, 1993.

Christopher W. Mahoney and William E. Nelson, with whom John N. Hanson, Washington, DC, Shelley V. Lucas, Fairfax, VA, and Sherlee Stanford Nelson, Washington, DC, were on the briefs, for appellants in No. 89–CV–55 and appellees in No. 89–CV–354.

B. Michael Rauh, with whom Carroll D. Hauptle, Jr., Washington, DC, was on the briefs, for appellees in No. 89–CV–55 and appellants in No. 89–CV–354.

Before TERRY, SCHWELB, and WAGNER, Associate Judges.

SCHWELB, Associate Judge:

This case involves allegations by parishioners or former parishioners of a church that the bishop and his associates induced them to make contributions to a church building fund by fraud and undue influence. The evidence and the contentions of the parties are described in this court's opinion dated November 3, 1992. *See Roberts–Douglas v. Meares*, 624 A.2d 405 (D.C. 1992) (*Roberts–Douglas I*). In that decision, we affirmed as to all plaintiffs except Daniel and Mae Harrison the trial judge's entry of partial summary judgment on the claim of undue influence; as to the Harrisons, we remanded that claim for trial. With respect to the claim of fraud, we held, with Judge Wagner dissenting, that the plaintiffs' discovery had been unduly curtailed, and we remanded for further pro-

ceedings. We affirmed the entry of summary judgment in favor of the defendants on the plaintiffs' claim of intentional infliction of emotional distress. Finally, we affirmed the trial court's denial of the defendants' request for Rule 11 sanctions, and we declined to impose costs on appeal against any of the parties.

The defendants have now filed a petition for reconsideration or, in the alternative, for rehearing en banc.[1] At the request of the court, the plaintiffs have filed a response, and the defendants have replied to the response. In their petition, the defendants contend, *inter alia*, that the defendants' conduct in allegedly requiring the Harrisons to walk through a line or "gauntlet" of deacons could not have coerced the Harrisons to contribute to the building fund because, according to the defendants, it is undisputed that the Harrisons' entire contribution predated their exposure to the "gauntlet." In their opposition, the plaintiffs have not contested this proposition, nor have they suggested that any portion of the Harrison's contribution was made after the "gauntlet" episode.[2] Under these circumstances, the defendants' assessment of the state of the record regarding the sequence of the events is unchallenged.

In *Roberts–Douglas I,* we explicitly observed that the question whether partial summary judgment was properly entered against the Harrisons was a close one. *Id.,* 624 A.2d at 422–23, 426. We concluded that a genuine issue of material fact was presented as to whether or not the Harrisons' contribution was secured by undue influence. We reached this conclusion on the basis of three significant factors. First, the size of the Harrisons' contribution (which they financed by obtaining a second mortgage) suggested the possibility of coercion. *See Roberts–Douglas I, supra,* 624 A.2d at 422–23, 426. Second, this was not a case limited to appeals from the

pulpit to the congregation at large; Mrs. Harrison had sworn that she and her husband had been urged in their own home to sell that home or risk God's displeasure. *Id.* at 423, 426. Third, the Harrisons had allegedly been compelled to "run the gauntlet" of deacons. *Id.,* 624 A.2d at 426. We considered all of these allegations in the context of the defendants' apparently relentless pursuit from the pulpit and elsewhere of contributions so substantial that they were allegedly well beyond some of the parishioners' means. *Id.,* 624 A.2d at 411–13, 423–25.

The plaintiffs having failed to challenge the defendants' representation that the Harrisons' contributions, in their entirety, predated these plaintiffs' experience with the line of deacons, the "gauntlet" component of the calculus has now been effectively eliminated. As we noted in *Roberts–Douglas I* with respect to the plaintiff Shirley Roberts–Douglas, the gauntlet episode "could not have retroactively induced the [Harrisons] to contribute." *Id.* 624 A.2d at 426 n. 31. We must therefore determine whether the Harrisons' remaining allegations were sufficient to defeat the defendants' motion. We now hold that no impartial juror could reasonably conclude on the basis of the summary judgment record (if the "gauntlet" evidence, which occurred after the fact, is eliminated from consideration) that the Harrisons proved that their contribution was induced by undue influence. *See Beard v. Goodyear Tire & Rubber Co.,* 587 A.2d 195, 198–99 (D.C.1991) (standard for granting summary judgment substantially the same as that for directing verdict).

Excluding the "line of deacons" from the calculus, the only direct evidence of undue influence presented by the Harrisons was the allegation in Mrs. Harrison's answers to interrogatories that Donald Meares had

---

1. By separate order entered today, the defendants' petition for rehearing en banc has been denied.

2. Mrs. Harrison stated in her affidavit that "I felt compelled to walk through the line even though I did not want to. The Elders praised those who had met their pledges, but those who had not given the full amount were intimidated. We had given $7,900 to the building fund, but had pledged $20,000."

told them,[3] on his initial visit, that they should sell their house.[4] If a "suggestion" to take such dramatic action is followed by an alleged attempt, through the device of a "gauntlet" of deacons, to shame the parishioner into doing what was asked, the combination of the two might reasonably be viewed as coercive, especially in the context of the defendants' overall campaign of solicitation. Without such a "follow-up," however, it is difficult to see how an impartial trier of fact could find that a contribution was obtained by "undue influence" on the basis of one isolated remark allegedly made by Donald Meares at the Harrisons' home on an initial visit.

The character of Meares' "suggestion" that the Harrisons sell their home might cause a reasonable juror to raise an eyebrow, and could well bring to his or her mind that most expressive word "chutzpah." The Harrisons, however, did not do what Meares asked them to do. In fact, they said they felt angry when he made the suggestion. There was evidence that at some point the Harrisons pledged $20,000, borrowed $24,000, but contributed $7900 to the church before leaving it. Absent from the record on summary judgment, though, is any statement by the Harrisons that they made this contribution as a result of coercive pressures by the defendants. Moreover, they provided no explanation of the circumstances under which they made the contribution. Thus, their showing was insufficient as a matter of law to support the claim that the defendants unduly or improperly coerced them into making the contribution or that they made the contribution because the defendants overbore their free will and caused them to do so. *Roberts–Douglas I, supra,* 624 A.2d at 417–19; *Himmelfarb v. Greenspoon,* 411 A.2d 979, 984 (D.C.1980).

Accordingly, the defendants' petition for rehearing is granted. Our decision in *Roberts–Douglas I* is modified to the extent that the trial court's entry of partial summary judgment in favor of the defendants on the undue influence claim as to Daniel and Mae Harrison is affirmed. All other requests by any party[5] for relief from or

3. In her answers to interrogatories, Mrs. Harrison represented that

   Donny had made the statement to us on his first visit that we should sell our home and give to the church. At the time, we had not thought of doing this and felt angry when he suggested it. His statement—what if God told you to sell this house and give the money to the church.

   Focusing on the words "what if," the defendants characterize Donald Meares' alleged statement as merely "hypothetical." The first part of the response, however, refers to an unconditional statement. The response as a whole must be construed in the light most favorable to the non-moving party. *Roberts–Douglas I, supra,* 624 A.2d at 418.

4. As we noted in *Roberts–Douglas I,* 624 A.2d at 410–11 n. 4, the parties failed to distinguish in their briefs between the record on the motion for partial summary judgment and the trial record. In discussing the claim of undue influence, the plaintiffs alluded liberally to trial testimony without always so identifying it. The defendants interposed no objection to this conflation of two different records, nor did they attempt to bring to the court's attention the plaintiffs' reliance on materials which were not properly before the trial court for purposes of the motion for partial summary judgment. Indeed, in their brief in this court, the defendants cited trial testimony in their defense of the trial court's summary judgment order.

   Moreover, the parties initially failed to include in the appellate record much of the material which was before the trial judge when he decided the pretrial motion. As a result of these omissions, this court invited the parties to designate the missing materials. We then examined them to assure that the various factual allegations made by the plaintiffs were before the trial judge when he decided the motion for partial summary judgment. A good many, as it turned out, were not.

   Our opinion in *Roberts–Douglas I* alluded to the alleged conversation between Donald Meares and the Harrisons as having occurred in the Harrisons' kitchen. This information is in the trial record (and in the plaintiffs' brief) but not in Mrs. Harrison's answers to interrogatories. Those answers, however, contain the substance of the information to which she later testified. Whether the conversation took place in the kitchen (rather than in some other room) is irrelevant.

5. In their response to the defendants' petition, the plaintiffs have requested that this court modify in their favor its decision of November 3, 1992. This request is untimely, *see* D.C.App.R. 40(a), and we do not consider it. We note in passing that the deposition of Daniel W. Harrison, which the plaintiffs quote in their opposition, was never made available to this court *even after the deficiencies in the appellate record were brought to counsel's attention. See*

modification of this court's decision of November 3, 1992, are denied and, except as here modified, that decision is reaffirmed.

*So ordered.*

WAGNER, Associate Judge, concurring in part and dissenting in part:

I concur in the court's decision on the undue influence issue. Appellees also seek rehearing and modification of this court's disposition of the discovery issue and the fraud count. For the reasons set forth in my opinion in *Roberts–Douglas I,* concurring in part and dissenting in part, I would grant rehearing and affirm the trial court's ruling on the discovery motion and its judgment for appellees on the fraud count. *See Roberts–Douglas v. Meares,* 1992 WL 320201 (D.C.1992). In other respects, I agree that the decision of the court should be reaffirmed.

*Roberts–Douglas I,* 624 A.2d at 425 (describing this court's efforts and enumerating the materi- als provided).