897 P.2d 268 (1995)
In the Matter of the ESTATE OF Evelyn Afton MAHERAS, Deceased.
Richard H. SUAGEE, Appellee and Counter-Appellant,
v.
Dr. William H. COOK, Appellant and Counter-Appellee.
No. 78211.
Supreme Court of Oklahoma.
April 18, 1995.
Rehearing Denied June 28, 1995.
Robert Inglish, Okmulgee, for appellee and counter-appellant.
Bruce W. Robinett, John M. Keefer, Bartlesville, for appellant and counter-appellee.
*270 OPALA, Justice.
The dispositive issue presented on certiorari is whether a third party, who receives no personal benefit from a decedent's will, may be regarded in law as capable of unduly influencing a will's procurement or its making? We answer in the affirmative.

I

THE ANATOMY OF LITIGATION
Evelyn Afton Maheras [Maheras or decedent] died testate on January 16, 1991 at the age of 96. She left the bulk of her estate to the First Baptist Church of Bartlesville [First Baptist], whose pastor, William H. Cook [appellant or Cook], is named co-executor *271 of the will. The decedent's sole heir is her nephew, Richard H. Suagee [appellee or Suagee]. Suagee, as contestant in this proceeding to admit the will to probate, urged at nisi prius that (1) Maheras did not have testamentary capacity, (2) her will's procurement and making had been unduly influenced by Cook, and (3) the subscribing witnesses were interested parties. The district court found that, although the decedent had testamentary capacity and the subscribing witnesses were disinterested, she had been unduly influenced by Cook.
The record documents a history of interaction among Maheras, Cook and First Baptist dating back to 1970. Maheras suffered from alcoholism and during the 1970's her health and living conditions deteriorated. From 1980 to 1983 Cook became closely acquainted with Maheras and visited in her home several times. By 1984 all of Maheras' friends were First Baptist members. Cook arranged for several of them to regularly assist Maheras by cleaning her home. Through this process the decedent became very dependent upon Cook and reposed great trust in him.
Although in 1983 Maheras attended several sessions of an estate planning seminar at First Baptist,[1] she failed to make the last session where a "Will Information Guide" was distributed. In January 1984 Cook brought her a copy of the missed "Will Information Guide" and spent several hours assisting Maheras in cataloging her assets. Later Cook requested Jesse J. Worten, III [Worten]  a lawyer and First Baptist member  to contact Maheras and discuss her will's preparation. Worten had not represented Maheras in any other legal matters. He was recommended by Thomas B. Preston after Preston declined Maheras' request to prepare her will, stating he no longer practiced law. Before Worten drafted Maheras' will he had one fifteen-minute telephone conversation with her in which he discussed the contents of her estate using the "Will Information Guide" provided him by Cook. After the will was drafted, it was sent to Cook. He then delivered it to Maheras and discussed its terms with her. Worten subsequently discussed the will's provisions in a second ten to fifteen-minute telephone conversation with her.
On February 4, 1984 Maheras was taken to Worten's office by a First Baptist member where after reviewing the will's terms a second time she executed her will. All of the subscribing witnesses were First Baptist members chosen by Cook. They testified at trial that Maheras understood the provisions of her will, appeared normal, and was aware of her nephew's [Suagee] existence. Worten sent to Cook his bill for the preparation of Maheras' will, which was presented to and paid by Maheras.
After the trial court ruled that Cook's actions had overborne Maheras' free agency, Cook appealed[2] and Suagee counter-appealed for review of the nisi prius testamentary capacity finding. The Court of Appeals concluded (1) that the decedent had testamentary capacity and (2) that because Cook personally received nothing by the will's terms, he was in contemplation of law incapable of unduly influencing Maheras. On certiorari previously granted, the Court of Appeals' opinion is now vacated and the trial court's probate order affirmed.

II

THE STANDARD OF REVIEW
Probate proceedings are of equitable cognizance.[3] While an appellate court will examine and weigh the record proof, it must abide by the law's presumption that the nisi prius decision is legally correct[4] and cannot be disturbed unless found to be clearly *272 contrary to the weight of the evidence or to some governing principle of law.[5] If legally correct, a district court's ruling will not be reversed because of its faulty reasoning, erroneous finding of fact or its consideration of an immaterial issue.[6]

III

IN THE ABSENCE OF MITIGATING CIRCUMSTANCES, UNDUE INFLUENCE IS PRESENT IF (1) A CONFIDENTIAL RELATIONSHIP EXISTED BETWEEN THE WILL'S MAKER AND ANOTHER PARTY AND (2) THAT OTHER PARTY ASSISTED IN THE PREPARATION OR PROCUREMENT OF THE WILL
If a will is found to have been affected by undue influence, the district court may declare it void in whole or in part.[7] The burden of persuasion in a will contest based on undue influence rests on the contestant.[8] A two-prong test is used to determine whether undue influence taints the procurement or preparation of a will.[9] First, the court must search for the presence of a relationship which would induce a reasonably prudent person to repose confidence and trust in another  i.e., a confidential relationship.[10] Second, the court must decide that the stronger party in the relationship assisted in the preparation or procurement of the weaker person's testamentary instrument.[11] Factors to be considered in applying this two-prong test include:
1. Whether the person charged with undue influence was not a natural object of the maker's bounty;[12]
2. Whether the stronger person was a trusted or confidential advisor or agent of the will's maker;[13]
3. Whether he/she was present and/or active in the procurement or preparation of the will;[14]
4. Whether the will's maker was of advanced age or impaired faculties;[15]

*273 5. Whether independent and disinterested advice regarding the testamentary disposition was given to its maker.[16]
When assaying the nature of a relationship to determine if it was confidential, the court's probe is not confined to instances where there was an interaction of persons who stand vis-a-vis one another in certain limited classes  e.g., familial relationships  since dependent relations may occur in any number of different settings.[17] Upon finding that a confidential relationship existed between the will's maker and another and ascertaining that the stronger party actively assisted in the preparation of procurement of the will, a rebuttable presumption of undue influence will at once arise.[18] The person who desires to overcome this presumption must then go forward to produce evidence[19] showing either that (a) the confidential relationship had been severed before the critical events in controversy[20] or (b) the will's maker actually received independent and competent advice about the disposition of his/her estate.[21]
The existence of a confidential relationship between Maheras and Cook is clearly shown by the record. Cook was Maheras' spiritual advisor and a close personal friend for more than the last fourteen (14) years of her life. First Baptist, the recipient of the bulk of Maheras' estate under her will, was not a natural object of her bounty.[22] She obviously placed great trust in Cook. It is unquestionable that he actively participated in securing the will which was economically beneficial to First Baptist. Maheras had suffered from alcoholism and was of advanced age at the time she executed her will. The record does not disclose that she ever received from any person independent and disinterested advice regarding her will. Upon finding that Cook stood in a confidential relationship with Maheras and that he had unduly influenced her in the procurement and making of the will in contest, the district court properly shifted to Cook the burden of producing evidence which would rebut the presumption of undue influence.

IV

A PERSON WHO IS NOT A BENEFICIARY UNDER A WILL'S TERMS MAY BE REGARDED AS LEGALLY CAPABLE OF OVERBEARING THE WILL-MAKER'S FREE AGENCY
At common law as well as under our statutory law[23] a will which is the product of an influence brought to bear against the maker in any manner which overcomes his/her free agency cannot be sustained. Whether the person exerting the overbearing influence actually benefits personally under *274 the will's terms is immaterial.[24]A person's lack of beneficiary status under the will's terms does not render one legally incapable of, or excuse him/her from, exerting undue influence.[25]
When a decedent's spiritual advisor procures a will that benefits his/her church, a court may find the will-maker's free agency overborne by the advisor's act if the law's criteria for establishing undue influence are met.[26] While religious institutions are not factually capable of unduly influencing one's will, individuals acting on their behalf can.[27] The gravamen of undue influence is legal harm from the wrongful exertion of power over the will's maker rather than the receipt of personal benefit from the offending act of influence.[28]
The extant jurisprudence[29] Cook offered here and below and which the Court of Appeals found controlling is factually distinguishable from the case under review. In neither of the two cases under relied upon by the appellate court  In re Heitholt's Estate and Kindt v. Parmenter[30]  was there proof of undue influence that would satisfy the criteria articulated in Section III of this opinion. To the extent our pronouncements in Heitholt and Kindt may be perceived as holding that a person standing in a confidential relationship with a will's maker is legally incapable of exerting undue influence unless he/she receives a benefit under the testamentary instrument's terms, Heitholt and Kindt may no longer be regarded as a correct exposition of Oklahoma's common law in will contests.

V

SUMMARY
Where a will-maker and another are shown to have stood in a confidential relationship and the stronger person, who actively participated in the procurement and preparation of the testamentary document, overbore the maker's free agency, a nisi prius order denying a will's admission because of the presence of undue influence will be sustained in the absence of proof that either (1) the confidential relationship had been severed before the critical events in question or (2) independent advice was given to the will-maker. Cook's receipt of some personal benefit (or interest) under Maheras' will is not a sine qua non for a judicial finding of undue influence. Upon showing that the will-maker's free agency was overborne by anyone standing in a confidential (or fiducial) relationship, a presumption of undue influence arises. The will's proponent must then come forward with evidence to overcome this presumption. When that burden is not met, a nisi prius order based upon a finding of undue influence is sustainable. The trial court's decision that denies the Maheras will's admission to probate is neither clearly contrary to the weight of the evidence nor to the applicable principles *275 of equity jurisprudence. Today's holding makes Maheras' testamentary capacity a moot issue. On certiorari previously granted.
THE COURT OF APPEALS' OPINION IS VACATED; THE DISTRICT COURT'S PROBATE ORDER IS REINSTATED AND AFFIRMED; AND THE CAUSE IS REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH TODAY'S PRONOUNCEMENT.
LAVENDER, V.C.J., and SIMMS, ALMA WILSON, KAUGER and WATT, JJ., concur.
HARGRAVE, J., dissents.
HODGES, C.J., and SUMMERS, J., not participating.
NOTES
[1] These sessions were conducted by Thomas B. Preston, a lawyer and member of First Baptist. Although later named as a co-executor in Maheras' will, he declined to serve.
[2] Cook has standing under the provisions of 58 O.S. 1991 § 22 to bring this appeal. See Sporn's Estate v. Herndon, 190 Okl. 149, 121 P.2d 602, 604-605 (1942).
[3] Matter of the Estate of Pope, Okl., 808 P.2d 640, 646 (1990); Matter of the Estate of Bartlett, Okl., 680 P.2d 369, 374 (1984); White v. Palmer, Okl., 498 P.2d 1401, 1406-1407 (1971).
[4] Carpenter v. Carpenter, Okl., 645 P.2d 476, 480 (1982).
[5] See Bartlett, supra note 3 at 374; Burdick v. Independent School Dist., Okl., 702 P.2d 48, 55 (1985); Carpenter, supra note 4 at 480; Snow v. Winn, Okl., 607 P.2d 678, 681 (1980); Wahby v. Renegar, 199 Okl. 191, 185 P.2d 184, 185 (1947); Harrison v. Eaves, 191 Okl. 453, 130 P.2d 841, 844 (1942).
[6] Willis v. Nowata Land and Cattle Co., Okl., 789 P.2d 1282, 1286-87 (1989); Davidson v. Gregory, Okl., 780 P.2d 679, 685 n. 23 (1989); Utica Nat'l Bank and Trust v. Assoc. Prod., Okl., 622 P.2d 1061, 1066 (1981); Holloway v. Ward, 84 Okl. 247, 203. P. 217, 219 (1922).
[7] The pertinent terms of 84 O.S. 1991 § 43 are:

"A will or part of a will procured to be made by duress, menace, fraud or undue influence, may be denied probate, and a revocation procured by the same means, may be declared void." [Emphasis added.]
[8] See in regard to will contests the provisions of 58 O.S. 1991 § 41(2) to the effect that "... [o]n the trial the contestant is the plaintiff, and the petitioner [proponent] is defendant." In re Wah-Kon-Tah-He-Um-Pah's Estate, 109 Okl. 126, 234 P. 210, 215 (1924); see also Brown v. Thomason, Okl., 354 P.2d 451, 455 (1960).

The common law accords with this statutory authority. See GEO. P. COSTIGAN, JR., WILLS, DESCENT, AND ADMINISTRATION 308 (3d ed. 1941), which states that "... most courts put the burden of establishing undue influence on the contestant." See also the UNIFORM PROBATE CODE § 3-407 (11th ed. 1993) which states:
"Contestants of a will have the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake or revocation. Parties have the ultimate burden of persuasion as to matters with respect to which they have the initial burden of proof." [Emphasis added.]
See also L. WHINERY, OKLAHOMA EVIDENCE, §§ 8.03 and 8.04 (2d ed. 1994).
[9] Matter of Estate of Beal, Okl., 769 P.2d 150, 154 (1989); In re Riddle's Estate, 165 Okl. 248, 25 P.2d 763, 765 (1933); Gidney v. Chapple, 26 Okl. 737, 110 P. 1099, 1106 (1910).
[10] A confidential relationship is a fiduciary relationship and exists whenever trust and confidence are placed by one person in the integrity and fidelity of another. Fipps v. Stidham, 174 Okl. 473, 50 P.2d 680, 683 (1935).
[11] Hubbell v. Houston, Okl., 441 P.2d 1010, 1017 (1967).
[12] White, supra note 3 at 1406; Hubbell, supra note 11 at 1017; In re Martin's Estate, Okl., 261 P.2d 603, 607 (1953).
[13] Hunter v. Battiest, 79 Okl., 248, 192 P. 575, 578 (1920); Gidney, supra note 9 at 1106.
[14] Riddle, supra note 9, 25 P.2d at 765.
[15] Anderson v. Davis, 208 Okl. 477, 256 P.2d 1099, 1100 (1952).
[16] White, supra note 3 at 1406.
[17] See In re Estate of Newkirk, Okl. 456 P.2d 104, 107 (1969); Hubbell, supra note 11 at 1017; Martin, supra note 12 at 608.
[18] Beal, supra note 9 at 156; White, supra note 3 at 1406.
[19] For a discussion of the distinction between the burden of producing evidence and the burden of persuasion, see 2 L. WHINERY OKLAHOMA EVIDENCE §§ 8.01-8.06 (2d ed. 1994). See also Director, OWCP v. Greenwich Collieries, 512 U.S. ___, ___-___, 114 S.Ct. 2251, 2255-2258, 129 L.Ed.2d 221 (1994), for a scholarly discussion of the distinction between burden of persuasion and that of evidence production.
[20] White, supra note 3 at 1406; Hunter, 192 P.2d supra note 13 at 578; Gidney, supra note 9 at 1106.
[21] When a will's maker consults fully and privately about his/her will with a person so dissociated from the stronger party that the advice may be treated as having been given impartially and confidentially, the advice could be deemed independent. White, supra note 3 at 1406; Hunter, supra note 13 at 578.
[22] The natural object of a will-maker's bounty is one related to him/her by consanguinity. See White, supra note 3 at 1406; Hubbell, supra note 11 at 1017.
[23] While Oklahoma's statutory law prescribes the manner of executing and attesting a will and sanctions undue influence as a ground for a will's invalidation, it provides or the proof in these contest See 58 O.S. 1991 §§ 41(2) and 61(3) and 84 O.S. 1991 § 43. Except as altered by the constitution and statutes, the common law remains in full force. 12 O.S. 1991 § 2; Wright v. Grove Sun Newspaper Co., Okl., 873 P.2d 983, 987 (1994).
[24] See W.D. ROLLISON THE LAW OF WILLS (1939), which states:

"As a general rule, it is immaterial by whom undue influence is exercised, if the free agency of the testator in making his will was destroyed by undue influence." Id. at 122.
See also 1 JEFFREY A. SCHOENBLUM, PAGE ON THE LAW OF WILLS § 15.9 (Supp. 1993); WM. M. McGOVERN, JR. ET AL., WILLS, TRUSTS, AND ESTATES § 7.3 (1st ed. 1988); GEO. W. THOMPSON, THE LAW OF WILLS § 144 (3d ed. 1947); GEO. P. COSTIGAN supra note 8 at 306-307, all of whom are in accord with the statement about the majority rule in the states. See also In re Welsh, 1 Redf.Sur. 238, 243 (N.Y. 1849); Tomkins v. Tomkins, 1 Bail. 92, 96 (S.C. 1828).
[25] Drake's Appeal, 45 Conn. 9, 20-21 (1877); Roberts v. Wynn [1663] 21 Eng.Rep. 560.
[26] Hegney v. Head, 29 S.W. 587, 590 (Mo. 1895); Muller v. St. Louis Hosp. Ass'n., 5 Mo. App. 390, 399 (1878). The common law also voids inter vivos gifts to churches, which were secured by spiritual advisors' undue influence. Roberts-Douglas v. Meares, 624 A.2d 405, 419, modified and aff'd, 624 A.2d 431 (D.C.App. 1993); Reynolds v. Molitor, 184 Conn. 526, 440 A.2d 192, 194 (1981); Fritz v. Mazurek, 156 Conn. 555, 244 A.2d 368, 371 (1968); Nelson v. Dodge, 76 R.I. 1, 68 A.2d 51, 57 (1949); Longenecker v. Zion Evangelical Lutheran Church, 200 Pa. 567, 50 A. 244, 247 (1901); Caspari v. First German Church of New Jerusalem, 82 Mo. 649, 651-52 (1884).
[27] See Hegney, supra note 26 at 590.
[28] See Nelson, supra note 26 at 57.
[29] In re Heitholt's Estate, 202 Okl. 351, 213 P.2d 865, 868 (1950); Kindt v. Parmenter, 83 Okl. 116, 200 P. 706, 707 (1921).
[30] Id.