### In re COOK'S ESTATE.
### COOK v. COOK et al.

No. 9534—Opinion Filed Oct. 8, 1918.

(175 Pac. 507.)

(Syllabus.)

1. Wills—"Undue Influence"—Sufficiency—Confidential Relations.

Undue influence, such as will invalidate a will, must be something which destroys the free agency of the testator at the time when the instrument is made, and which, in effect, substitutes the will of another for that of the testator. It is not sufficient that the testator was influenced by the beneficiaries in the ordinary affairs of life, or that he was surrounded by them and in confidential relations with them at the time of its execution.

2. Same—Sufficiency of Evidence.

Evidence examined, and held that the same does not reasonably tend to sustain the findings of the trial court that the testator "was unduly influenced by his mother and members of his family to execute said will."

Error from District Court, McClain County; F. B. Swank, Judge.

Will contest by Gena Cook for herself and for and as next friend of William Paul Cook against Mary Cook. From a judgment of the district court affirming a judgment of the county court denying probate of will of William Nye Cook, deceased, contestee brings error. Reversed and cause remanded with directions.

Blanton & Andrews and Thomas L. Farris, for plaintiff in error.

Joe A. Edwards and Franklin & Mauldin, for defendants in error.

KANE, J. The question involved herein arises out of the contest of the will of William Nye Cook, deceased. The testator at the time of his death left surviving him a wife and an infant son and his mother. His estate consisted of about 240 acres of land of the value of $5,000. The will of the testator, after bequeathing $100 to his wife and 40 acres of the land to his child, bequeathed and devised the rest and residue of his estate to his mother, whom he appointed his executrix without bond. Upon this will being presented for probate Gena Cook, the wife, for herself and as next friend of the infant son of the deceased, filed this contest upon various grounds, the only one which it is now necessary to notice being as follows:

"That at the time of making said will the said William Nye Cook was under undue influence, the same being exercised by Mary Cook, his mother, who is the chief beneficiary under the said will, and also other members of his family who were present during his last illness."

Thereafter the issues raised by this contest were heard by the county court, and judgment was rendered denying said will probate because, as the court found, the same was signed by decedent under duress and undue influence by his family and

friends. Thereafter the proponent, Mary Cook, filed an appeal bond in said cause for the purpose of appealing said cause to the district court. After finding that the will was duly and regularly executed, and that the deceased at the time of his death was competent to make a will, the district court affirmed the judgment of the county court denying the will probate upon the ground:

"That previous to the execution of said will the said William Nye Cook had been unduly influenced by his mother and other members of his family to execute said will and had been induced to do same prior to the execution of said will; that said will was not the result of his free and voluntary act and deed; and that said undue influence of his mother and other members of his family had been exercised prior to the execution of said will and prior to the time Dr. Shi and T. L. Farris came to the home of said William Nye Cook, where said will was executed."

It is to reverse this action of the district court that this proceeding in error was commenced. As there is no controversy between counsel for the respective parties upon any question of substantive or procedural law, all that is left for us to do is examine the evidence presented for review by the record, and, in the light of the agreed applicable principles of law, state our conclusion as to its sufficiency to support the judgment of **the trial court.** This we have done, and we are fully convinced that the contention of the plaintiff in error is well taken and should be sustained.

The evidence contained in the record is quite voluminous, and no useful purpose would be served by setting it out at any great length in this opinion. The material facts disclosed thereby may be briefly summarized as follows:

The testator, William Nye Cook, a member of the Chickasaw Tribe of Indians, of about one-sixteenth blood, and the contestant, Gena Cook, were married when both were very young, the former being 18 or 19 and the latter 16 years of age. It seems that the young people lived together as husband and wife for something like a year and a half or two years, during which time a child was born to them, when they separated, he remaining with his parents where they had been living, and she returning to the home of her parents, who resided in the same neighborhood. The reason for the separation as stated by the contestant was that she "got tired" of living with her husband's parents. This separation occurred some two years prior to the death of the testator. After the separation the testator frequently called upon his wife and child at her mother's home, but finally discontinued these visits upon the request of his mother-in-law. From then on the marriage relations were never resumed between husband and wife. There is nothing in the evidence which tends to fasten any blame for the separation upon the parents of either of the parties. The parents of the husband were willing that he and his wife should live with them or that they should provide a home for themselves, and the parents of the wife were perfectly willing that she should return home and live with them. The attitude of the mother of the testator, we think, is fairly and truthfully reflected in the following excerpt taken from her cross-examination:

"Q. You don't feel very kindly toward your daughter-in-law, do you? A. I have nothing against her. I never had a word with her in my life. Q. Are you friendly with her? A. No; since they separated I haven't been on friendly terms with her. Q. He lived directly with you since this separation? A. Yes, sir; his wife was something we never discussed in the home except when Mr. Wiggins came around, because he was trying to get them to go back together, and he asked me if I had any objections to them going back together, and I says, 'I did nothing to marry them and I did nothing to separate them and I am doing nothing against them going back together.' To use his own judgment. If he wanted to go back to her, it was immaterial with me."

Thus matters stood at the time of the death of the testator. The evidence directly relating to the execution of the will may be summarized as follows:

The testator, a robust and healthy young man, barely twenty-one years of age, was taken seriously ill with double pneumonia on Saturday and died the following Monday. The attending physician, who was also the family physician of the Cook family, testified that he first called on the testator early Saturday morning and found him suffering from double pneumonia; that he returned again the evening of the same day and stayed all night; that prior to his leaving Sunday morning the testator told him he wanted to make his will and also told him how he wanted to dispose of his property; that the witness made some memoranda of the provisions the testator wished in his will upon a prescription blank and informed him that when he returned in the evening he would bring a lawyer to prepare the will. After the witness left his patient Sunday morning he procured an attorney and returned with him to the Cook home, where the will was prepared. The witness testified that the will

was executed on Sunday, the 11th of March, and that the decedent died about 12 o'clock the Monday following; that when the will was executed the mind of the testator was perfectly clear and rational; that his illness did not make him delirious and that as far as he could observe the testator was free to execute a will as he saw fit.

· Mr. Farris, the attorney who prepared the will, testified in substance as follows: That he asked the testator how he wanted his will drawn and the latter answered that he did not want his wife to have any of his property; that he was willing to give it to his boy, but that if he did the Coles would get it; that the Coles were his wife's parents and that he did not want them to have anything to do with his property; that he wanted to leave it to his mother because his mother would take care of the baby; that after the will was drawn witness read the same over to the testator carefully and distinctly and when he had finished he said: "Now is this your will and is this the way you want your property to go?" and the testator said yes, and sat up on the side of the bed and signed the will on a small table placed by the side of the bed. Testator was then asked if he wanted certain persons to sign the will as witnesses and he said he did and thereupon the witnesses were called in and signed the will in the presence of the decedent and several other persons; that no other person than William Nye Cook dictated or indicated what to put into the will; that neither Mrs Cook nor Mr. Cook or any of the brothers or sisters of William Nye Cook indicated or dictated to the witness or William Nye Cook as to what he should put in the will or said anything regarding the contents or conditions of the will.

·· Mary Cook testified in her own behalf that the decedent had complained of being ill on Saturday morning when they first had the doctor to attend him; that previous to his last illness she never did say anything to decedent nor did decedent say anything to her about making a will; that on Saturday morning decedent said to her: "Mother, if I was to make a will would it be any good if I was to get well?" and witness told him she didn't suppose it would; that it would be like a note or anything else, he could take it up when he got ready; that decedent didn't tell her he wanted to make a will; that when decedent did make a will witness did not ask him to make a will nor did she have anything to do with the execution of the will nor any of its terms; that before the doctor came decedent told his brother that he didn't think he would ever get well and that he had just as well die now as

later on; that neither the witness nor her daughter nor son nor husband ever talked to William Nye Cook about drawing a will or suggested or dictated its terms; that witness did not at any time tell her son what to put in the will or ask him to put anything in the will.

Many other witnesses corroborated these witnesses and there was no evidence offered tending to contradict any of them or which directly or indirectly tended to show that the matter of making a will was ever discussed by any member of the Cook household prior to the illness of the testator, or that subsequent to that event was anything said or done in that regard except as related herein.

We are wholly unable to find from this evidence any justification whatever for refusing the will probate. Undue influence such as will invalidate a will, must be something which destroys the free agency of the testator at the time when the instrument is made, and which, in effect, substitutes the will of another for that of the testator. It is not sufficient that the testator was influenced by the beneficiaries in the ordinary affairs of life, or that he was surrounded by them and in confidential relations with them at the time of its execution. Mere general influence, not brought to bear on the testamentary act is not undue influence; but in order to constitute undue influence, it must be used directly to procure the will, and must amount to coercion destroying the free agency of the testator. Mere suspicion that undue influence was brought to bear is not sufficient to justify the setting aside of the will. Estate of Keegan, 139 Cal. 123; McCullock v. Campbell, 49 Ark. 367; Westcott v. Sheppard, 51 N. J. Eq. 315.

It is true from the nature of the subject that proof of undue influence is necessarily largely or wholly circumstantial and the contestant is not confined to the facts which he may be able to adduce, but is entitled to all the natural inferences which may be derived from established facts. But the will of a person found to be possessed of sound mind and memory ought not to be set aside on evidence tending to show only a possibility of undue influence. The express intentions of the testator should not be thwarted without clear reason therefor. The right to make a will includes the right to make it according to the testator's own desires, subject only to the statutory restrictions. Unequal or unnatural provisions in themselves raise no presumption of undue influence. They may be considered with other evidence in determining the question, is this the testator's will? but they do not

shift the burden of proof, and, in the absence of proof that undue influence has been exercised, they have no weight. If the will is expressive of the testator's wishes lawfully made, the opinions of other persons, however they may condemn its motive or disapprove its scheme, cannot, in any way, rightfully control his power to do with his own as he pleases, without impairing one of the incidents which give to every man's property its value. In our judgment there was absolutely no evidence adduced at the trial tending to show that whatever influence Mary Cook or the members of her family may have had over the testator it was ever exercised for the purpose of procuring a will of such a kind as to be beneficial to her and to the prejudice and disappointment of others.

For the reasons stated, the judgment of the court below must be reversed, and the cause remanded with directions to proceed in accordance with the views herein expressed.

All the Justices concur.