Wesley K. WHITE, Plaintiff in Error,

v.

Suzanne PALMER, Defendant in Error.

No. 42685.

Supreme Court of Oklahoma.

Nov. 30, 1971.

Rehearing Denied July 18, 1972.

**1402**

Farmer, Woolsey, Flippo & Bailey, Tulsa, for plaintiff in error.

Tucker, Boyd & Parks, Spillers & Spillers, Tulsa, for defendant in error.

IRWIN, Justice:

The trial court determined that certain portions of the Last Will and Testament, with a codicil attached, of Hester M. Duran, Deceased, were procured by the undue influence of Wesley K. White, plaintiff in error, and denied admission to probate all those portions favorable to White. The issue presented is whether the trial court's findings and judgment are against the clear weight of the evidence.

Hester M. Duran, a wealthy widow, died on November 19, 1965, and her will and codicil were offered for probate by the named Executor, Wesley K. White. The will was executed on December 4, 1963, and the codicil was executed on September 22, 1965. Suzanne Palmer, the granddaughter and only heir at law of Mrs. Duran, contested the admission to probate of the will and codicil on the grounds of undue influence and duress on the part of White.

Mrs. Duran left an estate valued at approximately $1,000,000. Approximately $350,000. of this sum was her individual estate, and she had inherited the remainder from her second husband who predeceased her. In her will, Mrs. Duran bequeathed $54,000. to named organizations and individuals; cancelled all debts, obligations and accounts owed by White to Mrs. Duran; named White the trustee of a $200,000. trust in favor of Suzanne Palmer, the contestant; and bequeathed the residue and remainder of her estate to White. In the codicil, a $20,000. bequest contained in the will to an individual was reduced to $2,000. which inured to the benefit of White since he was the residuary beneficiary.

The trial court found that those portions of the will favorable to White were procured by undue influence on the part of White and admitted the will to probate save and except those portions favorable to White which are: (1) cancelling the debts and obligations that White owed to Mrs. Duran; (2) appointing White the Trustee of the $200,000. trust in favor of Suzanne Palmer; (3) bequeathing to White the residue and remainder of the estate; (4) and appointing him the Executor of the will.

The trial court also denied admission of the codicil to probate on the ground that it was procured by undue influence on the part of White.

White appealed from the order overruling his motion for a new trial.

Mrs. Duran's second husband, to whom she was married for approximately 30 years, died in April, 1961. They had no children. Mrs. Duran had one son during her first marriage who had died. This son

was the father of Suzanne Palmer, the contestant. Mrs. Duran was approximately 72 years old at the time of her second husband's death.

White was approximately 45 years of age; a public accountant; and had been employed by Mr. Duran on a part time basis for about 10 years. White was married and had three teenage daughters and owned a small home, a used car, about $3000. in stocks and had about $2000. in personal property. During the lifetime of Mr. Duran, White saw Mrs. Duran infrequently and only knew her casually. Shortly after the death of Mr. Duran in April, 1961, Mrs. Duran employed White on a part time basis to assist in keeping books and records. It appears that Mrs. Duran started paying White about $30.00 per month for his services and the first check to White for $30.00 was issued in July, 1961.

Mrs. Duran and one of the Executors of Mr. Duran's estate had some difficulty. Shortly after the death of Mr. Duran, the Executor of Mr. Duran's estate requested Mrs. Duran to pay some bills owed by Mr. Duran from her personal account. This she did. White learned of this and had Mrs. Duran file a creditor's claim against her husband's estate for the money she had expended. There was also evidence that White did not agree that the Executors had acted wisely in the sale of some stock owned by Mr. Duran's estate and also the Executor had not paid some ad valorem taxes on time and had to pay a penalty. White brought all these matters to the attention of Mrs. Duran and she became displeased with the Executor. The end results were: In October 1961, Mrs. Duran cancelled the right of access that the Executor had to Mrs. Duran's safety box, and Mrs. Duran signed a letter which had been prepared by White and dated January 4, 1962, directing the Trustees and Executors to thereafter deal with White on matters relating to her husband's estate, and "if you consider it necessary to see me in person he (White) will arrange the appointment."

The trial court discussed in its findings of fact several reasons, when considered together, why it determined that those portions of the will and codicil which were favorable to White, were procured by the undue influence of White. One of these reasons was that the disposition of Mrs. Duran's estate under the December 4, 1963 will and the September 22, 1965 codicil, constituted a substantial departure from the disposition of her estate under her previous wills. Another reason was that White, a stranger to the blood, received an unnatural, large share of Mrs. Duran's estate which was larger than the share received by Suzanne Palmer, her natural granddaughter.

The trial court recognized that prior to the death of Mrs. Duran's second husband in April, 1961, Mrs. Duran by will had bequeathed one-half of her estate to her husband and the remaining one-half to her granddaughter, Suzanne. The record discloses that after the death of Mr. Duran, a Mr. Wilson, who was Mrs. Duran's brother and who lived in California, visited with Mrs. Duran. He reviewed her will that had been executed during the lifetime of her husband and suggested the advisability of her executing a new will. On November 9, 1961, Mrs. Duran executed a new will bequeathing $69,000. to named organizations and individuals, which included a $25,000. bequest to her niece, Virginia Hirst, and $20,000. bequest to her nephew, Lawrence Stewart. The residue and remainder of her estate was bequeathed to the National Bank of Tulsa, as Trustee, for the use and benefit of Suzanne, her granddaughter, who was approximately eighteen years old at that time. Under the trust, Suzanne was to receive $400.00 per month; at the age of 21, one-fourth of the principal; at the age of 26, one-half of the remaining principal; and at the age of 35, the remainder of the principal and the income, free of the trust. The will made provisions for distribution in case of the death of Suzanne. The National Bank of Tulsa was named the Executor.

A copy of the November 9, 1961 will was mailed to Mr. Wilson on the date it was executed. The next day Mrs. Duran executed a codicil. In the codicil White was named the Trustee in lieu of the Bank; and White was also named the sole Executor of Mrs. Duran's will, to serve without bond. Neither the Bank nor Mr. Wilson was informed of the codicil. On November 15, 1961, Mr. Wilson in a letter addressed to Mrs. Duran's attorney suggested some changes in Mrs. Duran's will of November 9, 1961.

On November 30, 1961, Mrs. Duran executed a new will. The bequests to the organizations and individuals remained the same as they were in the November 9th will except an additional bequest of $30,000. was made to her niece, Margaret Hardman. The National Bank of Tulsa was again appointed the Trustee for the trust in favor of Suzanne and the Bank was again nominated the Executor of her will.

The next day, December 1, 1961, Mrs. Duran executed a codicil to her November 30th will, and again by codicil, reappointed White as the Trustee and Executor in lieu of the Bank.

On December 4, 1963, the will in controversy was executed. In this will the bequests to the named organizations and named individuals remained the same, except the bequest to the niece, Virginia Hirst, was reduced to $20,000., (had been $25,000. in the two previous wills) and the bequest to the nephew, Lawrence Stewart, was reduced to $10,000., (had been $20,000. in the two previous wills). Margaret Hardman, who had been bequeathed $30,000. in the November 30th will, died prior to the execution of the December 4, 1963 will and she was not mentioned. However, for the first time, White was mentioned in Mrs. Duran's will, although he had been named Trustee and Executor in the two codicils. In the December 4, 1963 will, any debts, obligations or accounts owing to Mrs. Duran by White were forgiven and cancelled. Also, instead of placing her residuary estate in trust for Suzanne, as had been done in the previous wills, assets and cash of the total value of $200,000. were bequeathed to White, as Trustee, in trust for the use and benefit of Suzanne Palmer. The property to go into the trust was left to the sole discretion of the trustee, and the amount to be paid by the trustee (White) to Suzanne was also left to the sole discretion of the trustee. Suzanne was approximately 20 years of age at the time this will was executed and she was to receive one-fourth of the principal of the trust on reaching 21 years of age; one-half of the remaining principal at 26 years of age; and the remainder of the principal and accumulated income at the age of 35. The residue and remainder of Mrs. Duran's estate was bequeathed to White; and White was named the Executor of the will, to serve without bond. In the event White could not serve as the Executor or Trustee, the National Bank of Tulsa was appointed in his stead.

In the codicil dated September 22, 1965, the $20,000. bequest to Virginia Hirst was reduced to $2,000. As heretofore stated, this reduction in the bequest to Virginia Hirst inured to the benefit of White since he was the residuary beneficiary. Mrs. Duran died approximately two months after the execution of the codicil.

The record supports the finding of the trial court that there had been a substantial departure in the disposition of Mrs. Duran's estate which inured to the benefit of White; and that White, a stranger to the blood, received an unusual, large share of Mrs. Duran's estate which was larger than the share received by Suzanne Palmer, her natural granddaughter.

In addition to receiving the greatest share of Mrs. Duran's estate under her will and codicil, White also received other benefits from Mrs. Duran during her lifetime. Individual accounts of Mrs. Duran in a savings and loan account and in a brokerage account were changed to joint tenancy with White being named as joint tenant with Mrs. Duran. White also had au-

thority to write checks on one of her checking accounts. These accounts involved substantial sums of money.

In this connection the trial court in its findings of fact discussed the fact that White, in addition to the testamentary bequests, "received unusual or rather large gifts and the evidence clearly reflects that Mr. White, through the manipulation of the stock accounts and through the establishment of joint savings accounts, received * * * substantial sums of money from Mrs. Duran during her lifetime." The court also mentioned the fact that Mrs. Duran had given White a cadillac and that she had paid for his house.

The record discloses that White's attention to Mrs. Duran and to her business steadily increased to the extent that his accounting business suffered greatly and that he devoted less and less time to his wife and children. In discussing the evidence, the trial court stated that the attention White heaped upon Mrs. Duran was somewhat unusual considering the age of White and the fact that he was married and had children. The court also discussed the fact that Mrs. Duran had said that she would marry White if White were free to marry and that while Mrs. Duran was in the hospital with terminal illness, White came before the court and under oath stated that there was an extreme emergency as to why he should be divorced from his then wife, and obtained a divorce under a waiver of the court's rule.

The court also discussed the "secrecy surrounding the testamentary disposition or acts as to other relatives or to put it in another way the exclusion of the other relatives as to the knowledge of testamentary disposition"; and said that White either drafted the will in question or actively participated in its preparation. In this connection, the court was concerned as to whether or not Mrs. Duran, prior to or at the time of the execution of her will and codicil, had received "independent advice". The court mentioned the fact that Mr. Wilson, (Mrs. Duran's brother) had received a copy of the will dated November 9, 1961, but received no notice that the next day, or shortly thereafter, White was substituted as the Trustee and Executor in lieu of the bank.

The court said that when Mrs. Duran's attorney came to Mrs. Duran's home to discuss her estate planning, that there was a discussion with White concerning Mrs. Duran's testamentary wishes in 1961, and that every conference the attorney had with Mrs. Duran, White was present except when the will was actually executed. The court specifically found that White actively participated in the preparation of the will because some of the exhibits show that he made in his own handwriting certain changes in the instruments which were delivered to Mrs. Duran's attorney by White. The court said the evidence showed unequivocally that White did advise and counsel with Mrs. Duran and did himself make written amendments in the rough draft of the will.

In further discussing whether Mrs. Duran had "individual advice", the court stated that Mrs. Duran's lawyer never did testify that he conferred fully and privately with Mrs. Duran, except at the time of the execution of the will. The court found as a matter of law that Mrs. Duran did not receive independent advice concerning certain portions of her will, which were those portions favorable to White.

The trial court also found that "there is no question in this court's mind and the record is just replete with the evidence that there was a close, confidential, if not a fiduciary relationship between White and Mrs. Duran." The record supports this finding.

The record is barren of any evidence whatsoever that would tend to establish any breach of duty on the part of the attorney who prepared Mrs. Duran's wills. In fact the trial court was very complimentary for the attorney's candid testimony, his unequivocal answers, and the manner in which he conducted himself when called

upon to perform legal services for Mrs. Duran.

▪ In considering the issue of undue influence we find that a properly executed will may be admitted to probate in part and denied probate as to any part shown to be the result of undue influence. Pendley v. Schroeder, Okl., 276 P.2d 247. Proof of undue influence is necessarily largely or wholly circumstantial, and the contestant is not confined to the facts which he may be able to adduce, but is entitled to all natural inferences which may be derived from established facts. In Re Cook's Estate, 71 Okl. 94, 175 P. 507. To establish undue influence it is not necessary that there be direct testimony that threats were made or even persistent entreaty or persuasion was brought to bear upon the mind of the testator. It is sufficient that, if from the surrounding circumstances connected with the making of the will it appears that any undue influence has been exercised, the court should not admit the will to probate. In determining the question of undue influence, the court should take into consideration the association of the parties, the opportunity for undue influence afforded the person who is especially favored by the terms of the will, and the effect of the will upon those persons whom we would naturally expect to be the recipients of his bounty. But opportunity for undue influence, standing alone, is not sufficient to establish undue influence. McCarty v. Weatherly, 85 Okl. 123, 204 P. 632. It is not necessary that the undue influence be exerted at the time or immediately prior to the execution of the will. If the undue influence has once been exerted it will be presumed to follow and taint every transaction between the parties thereafter and such presumption of undue influence should be rebutted by disinterested witnesses. Hunter v. Battiest, 79 Okl. 248, 192 P. 575.

In Hubbell v. Houston, Okl., 441 P.2d 1010, we held that:

"Undue influence, such as will invalidate a provision in a will, must be some-

thing which destroys the free agency of the testator and which, in effect, substitutes the will of another for that of the testator. It is not sufficient that the testator was influenced by the beneficiaries in the ordinary affairs of life or that he was surrounded by them and in confidential relations with them at the time of the execution of the will.

\*      \*      \*      \*      \*      \*

"While active participation in the preparation and/or execution of a will by one who stands to benefit therefrom and who enjoys a confidential relation with the testator may give rise to a presumption of undue influence, such active participation, to be accorded such effect, must go to the substance of the testamentary act. The mere presence of the beneficiary in the room at the time of the execution of the will does not constitute 'active' participation in either the preparation or execution of such instrument."

▪ When the legal presumption of undue influence has arisen by showing confidential relations, whether in dispositions of property inter vivos or by will, the burden of proof is upon the party seeking to take the benefit of such disposition to rebut the presumption attaching thereto by showing either a severance of the confidential relations, or that the party making the disposition had competent and independent advice in regard thereto. Hunter v. Battiest, supra. Independent advice has been held to mean the testator had the benefit of conferring fully and privately about the consequences of his intended will with a person who was not only competent on such matters, but who was so disassociated from the interest of the beneficiary named there as to be in a position to advise with the testator impartially and confidentially. Anderson v. Davis, 208 Okl. 477, 256 P.2d 1099.

In Re Hess' Estate, Okl., 379 P.2d 851, we said that the contest of a will presents a matter of equitable cognizance and consistent with the principles of appellate review in equity, this Court does, on appeal

of a will contest, weigh the evidence, but the judgment of the trial court will not be disturbed unless clearly against the weight of the evidence.

■ The findings of the trial court are not against the clear weight of the evidence that a confidential relationship existed between White and Mrs. Duran; and that White had every opportunity to influence Mrs. Duran in her business affairs and in the preparation of her will; that White actively participated in the preparation of the will and codicil and Mrs. Duran did not receive independent advice concerning certain portions of her will and codicil; and that White is the principal beneficiary under the will even though Mrs. Duran left surviving a granddaughter to whom she had bequeathed, in previous wills, the principal share of her estate prior to the execution of the December 4, 1963 will under contest.

We hold that the trial court's findings and judgment that those portions of Mrs. Duran's will which were favorable to White, and the codicil, were procured by the undue influence of White are not against the clear weight of the evidence.

White argues that the will was executed approximately two years before the death of Mrs. Duran and if she had wanted to change or revoke it, she had plenty of time to do so.

The confidential relationship existed between White and Mrs. Duran not only prior to the time of the execution of the will in December, 1963, but such confidential relationship continued until her death. During this period of time White continued to exert undue influence upon Mrs. Duran. She continued to bestow gifts upon him and he continued to bestow his unusual attentions upon her.

■ Before trial, White filed an application to disqualify the trial judge on the grounds that in a similar will contest case, the trial judge had rendered a decision destroying a residuary clause on grounds of undue influence. The trial judge refused to disqualify. We find no merit to White's contention that the trial judge was disqualified in the case at bar.

Judgment affirmed.

DAVISON, V. C. J., and WILLIAMS, JACKSON, HODGES and McINERNEY, JJ., concur.

LAVENDER, J., concurs in results.