In the Matter of the ESTATE OF Anna L. SEEGERS, Deceased.

Eileen M. SHARP, Joan B. Stach, William H. Weingartner, Charles E. Weingartner, and Carl J. Weingartner, Jr., Appellants,

v.

Freeman L. COMBRINK, Executor of the Estate of Anna L. Seegers, Appellee.

No. 65574.

Court of Appeals of Oklahoma, Division 4.

Sept. 16, 1986.

Rehearing Denied Dec. 3, 1986.

Certiorari Denied Feb. 11, 1987.

Mark A. Oruch, Levine & Associates, P.C., Oklahoma City, for appellants.

Robert L. Kasper, Perry, John T. Edwards, Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, for appellee.

## OPINION

STUBBLEFIELD, Presiding Judge.

This is a contest of a will, after its admission to probate, by six nieces and nephews of the testatrix. Contestants had been included in two previous wills but were excluded in the will executed approximately five weeks before the death of the testatrix and were not notified of the probate proceedings until after admission to probate of the disputed will. The trial court sustained Proponent's demurrer to the evidence after it had overruled a motion to disqualify the attorney for the estate, who drew up and witnessed the will. Reversed and remanded.

### I

Anna L. Seegers died on April 14, 1985, at the age of ninety-one after a lengthy illness which began with cancer of the colon and progressed to cancer of the liver and lymphatic system. In 1981, Mrs. Seegers had changed her will to give twenty-five equal shares to her one surviving sister and each of her nieces and nephews, including her sister's children. In October 1984, she again changed her will to include the wife of a deceased nephew as an equal beneficiary. On February 28, 1985, a new will was executed in which a bequest of certain stock, which had been sold, was deleted and the names of her sister's six children were removed.

Freeman Combrink, a nephew who had been appointed Mrs. Seegers' conservator in 1982 and was the named executor in each of the wills since 1981, filed a petition to admit the February 28, 1985, will to probate. Notice was given to all known "heirs, devisees and legatees." Notice was not given to the six nieces and nephews who had been removed from the will. The will was admitted to probate on May 7, 1985. On May 8, one of the nephews who had received notice asked one of the contestants if he had attended the probate hearing "yesterday." This inquiry was the first indication to any of the contestants that they had been eliminated as equal beneficiaries under the will.

On June 7, 1985, the six nieces and nephews filed a petition to contest the validity of the will after its admission to probate pursuant to 58 O.S.1981 § 61(3), which provides for a will contest when the material facts show: "That the testator was not competent, free from duress, menace, fraud, or undue influence when the will allowed was made." They alleged that Freeman Combrink, upon whom Mrs. Seegers was totally dependent, and who exercised "direct control and supervision" of Mrs. Seegers, had substituted his own volition for that of Mrs. Seegers in the execution of the February 28, 1985, will.

Before the hearing on the merits of the case, Contestants moved for the disqualification of Robert L. Kasper, the attorney secured by Combrink to write Mrs. Seegers' wills and who had prepared the 1985 will after Combrink had called him to inform him of the changes to be made in the previous document. Kasper also served as a witness to the will's execution. Contestants based their motion to disqualify on Canon 5 of the Code of Professional Re-

sponsibility because Contestants intended to call him as a witness regarding the central issue in controversy, the validity of the will.

The trial court overruled the motion to disqualify and subsequently sustained Proponent's demurrer to the evidence. It is from these orders that Contestants appeal.

## II

Neither party raised any objection to the validity of the will based upon 84 O.S.Supp. 1985 § 41(B),[1] which requires that when a person subject to a conservatorship disposes of an estate by will, the will must be subscribed and acknowledged in the presence of a judge of the district court. The clear statutory mandate seems to have been overlooked or ignored at the trial court level.

While the order of conservatorship is not a part of the record, there is testimony that Combrink filed a petition seeking his appointment as conservator for Mrs. Seegers and that the court entered an order of appointment. Therefore, this court must presume that Mrs. Seegers was under conservatorship when both the 1984 and 1985 wills were executed and that neither of these wills were executed in compliance with the provisions of 84 O.S.Supp.1985 § 41(B). Failure to address the effect of this statute in the face of clear evidence of its applicability is fundamental error which we must address even though not raised by either party.

Although the existence and/or legality of the conservatorship was not litigated in the will contest proceedings, when the issue of the applicability of section 41(B) is directly addressed, the parties may choose to do so. Therefore, Proponent may overcome the prima facie showing that Mrs. Seegers was under a conservatorship by introducing evidence to the contrary on remand. Because of the possibility that Proponent may establish that Mrs. Seegers was, in fact, not under a conservatorship, the merits of the issues raised on appeal will be addressed.

## III

A will contest is a case of equitable cognizance, and on appeal the entire record will be examined and the evidence will be weighed. However, the findings of the trial court will not be disturbed unless clearly against the weight of the evidence. *Sutton v. Faulkner*, 446 P.2d 611 (Okla. 1968).

Contestants first argue that "[w]here a confidential relationship exists between the deceased and a principal beneficiary, and where the beneficiary actively participated in the testamentary disposition of the will, combined with the fact that the will is inconsistent with the claims of duty and affection, then presumption of undue influence arises." To establish undue influence, Contestants offered direct testimony that threats and persistent persuasion were brought to bear upon the testatrix. "[P]roof of undue influence is necessarily largely or wholly circumstantial, and the contestant is not confined to the facts which he may be able to adduce, but is entitled to all the natural inferences which may be derived from established facts." *In re Cook's Estate*, 71 Okla. 94, 96, 175 P. 507, 509 (1918). In determining the issue of undue influence, "the association of the parties, opportunity for undue influence afforded the person who is especially favored by the terms of the will, and the effect of the will upon those persons whom we would naturally expect to be the recipients of his bounty" must be considered. *White v. Palmer*, 498 P.2d 1401, 1406 (Okla.1971). If it appears from the "surrounding circumstances connected with the making of the will ... that any undue influence has been exercised," the will should not be admitted to probate. *Id.* But, the opportunity for undue influence standing alone is not sufficient to establish undue influence. *In re Estate of Newkirk*, 456 P.2d 104 (Okla.1969); *McCarty v. Weatherly*, 85 Okla. 123, 204 P. 632 (1922).

Mrs. Seegers was first diagnosed as having cancer of the colon before the 1981 will

1. The effective date of this statute was October 1, 1982.

was executed. After it was determined that she had cancer of the lymphatic system and liver, Mrs. Seegers moved from her farm into town at Billings, where Combrink lived. Combrink had contacted Kasper, who had written the wills of Combrink's parents, handled the probate of their estates, written Combrink's and his wife's wills, and represented Combrink in his action to be appointed conservator of Mrs. Seegers, to act as Mrs. Seegers' attorney when her 1981 will was executed. There was uncertainty about the provisions of any wills executed prior to 1981, but the evidence clearly indicates that on June 10, 1981, Mrs. Seegers wanted her one surviving sibling, each of her surviving nieces and nephews, and a niece and nephew of a deceased brother to share equally in the residue of her estate. Thus, the residue of her estate would be divided into twenty-five equal shares for distribution.

On August 2, 1981, in a letter to her sister, Minnie Weingartner, mother of Contestants, Mrs. Seegers explained her reasons for such provisions:

[M]aybe I didn't make myself clear. No Bea [wife of Contestant William Weingartner] is not in my will. Bill is. [I]f she thinks she is, she's not. Freeman said one day maybe I had better put your kids on. But you are still living. [I]t should go to you. But the reason I did it the way I did was instead of dividing it equal to each family & then divide equal to each kid in the family, there is only 1 in Elmer's family. Max would get all of his share. [S]o would George and Ernest neice [sic] & Henry's family that amount would be divided among his 8 kids & each kid would get ⅛ of the amount Maxine, Geo. & the neice [sic] would get. Charlie's kids would get ⅓ of the amount. Oscar's would get ½. [D]o you understand. [I]f I did it that way you would get it & your kids wouldn't get any.

Combrink was subsequently appointed conservator in response to a petition filed in 1982 by Combrink stating that Mrs. Seegers "by reason of advanced age and physical disability is unable to manage her property and therefore is likely to be deceived or imposed upon by artful and designing persons."[2] Mrs. Seegers was in and out of the hospital and a nursing home until the time of her death, including a hospital stay in August or September 1984. When she was released from the hospital on October 13, 1984, nephew William Weingartner and his wife Bea came to her home to care for her. It was during this time that Mrs. Seegers executed the October 1984 will. Combrink had reminded Mrs. Seegers that a nephew's widow had not been included in the 1981 will. There was testimony that Mrs. Seegers had felt the niece-in-law needed the money and Mrs. Seegers wanted to treat all of her relatives equally. Therefore, the only change in the 1984 will was to add the niece-in-law to share equally with the other twenty-five beneficiaries.

Contestants offered as evidence of undue influence in the execution of the 1985 will the general manner in which both Combrink and Kasper dealt with Mrs. Seegers during the preparation and execution of the 1984 will. Combrink called Kasper and told him what changes should be made in the will. Kasper brought the prepared will to Mrs. Seegers' home for execution. Combrink requested that William and Bea Weingartner leave the house while the will was being executed. The Weingartners testified that Mrs. Seegers had requested, however, that they remain present to remind her to ask about the mineral rights on the real property. When they refused to leave, Combrink told them to stay in another room and not say anything.

The Weingartners recorded by videotape the execution of the 1984 will and testified that when Mrs. Seegers was trying to read the will, Kasper told her it was the same as the 1981 will except the name of Ernestine Combrink, a niece-in-law, had been added. Because of Mrs. Seegers' poor eyesight,

2. Again we reiterate that no record of these purported proceedings was introduced at trial and that these facts are proven entirely by testimony of the purported conservator.

which required her to use eyeglasses and a magnifying glass to read, she read very slowly. When she tried to continue to read, Kasper turned to the last page of the will and showed her that there were twenty-six names and showed her where to sign. Bea Weingartner testified that at that point she reminded Mrs. Seegers that she had wanted to ask about the mineral rights. She stated that Kasper had motioned for her to be quiet and Combrink had "picked [Mrs. Seegers' cane] up and started shaking it at me." According to Mrs. Weingartner, Kasper then told Mrs. Seegers to sign the will and then he would answer her questions, which she did. Combrink agreed that he asked the Weingartners to leave, but both he and Kasper had scanty recall of the events as they occurred on that occasion. Kasper admitted that he had been in a hurry and was there but a short time. The Weingartners testified that Kasper was there for seventeen minutes as measured on the videotape recording. Therefore, the Weingartners argued that the unwillingness to answer Mrs. Seegers' questions, the cryptic instructions to sign the 1984 will, and her willingness to sign before questions were answered were indicative of the susceptibility of Mrs. Seegers to undue influence exerted by Combrink with the aid and assistance of Kasper.

Approximately ten days after the 1984 will was executed, Mrs. Seegers became very ill and was returned to the hospital. From the hospital she was taken to the nursing home on November 4, 1984, where she stayed until April 1, 1985. During this time she became increasingly physically debilitated and continued to have severely impaired vision.

Combrink testified that Mrs. Seegers had told him in January 1985 that she wanted to change her will to take the six Weingartner children out of the will and to remove the provision regarding certain stock that had been sold. He said he tried to talk her out of it, but she insisted. He said he called Kasper and told him that Mrs. Seegers wanted to take Contestants out of the will. Kasper drew up the will as Combrink told him and took the prepared will to the nursing home. Combrink arranged to have a banker come to the nursing home to act as notary. Kasper said that he had to wait about forty-five minutes to an hour for the banker to arrive and for Combrink to get the nursing home doctor, who was not Mrs. Seegers' doctor, to act as a witness. Combrink was at the nursing home during that time, but was not physically present in the room at the time the will was executed.

Combrink testified that aside from telling Mrs. Seegers that taking Contestants from the will would cause a "hassle," he did not explain to her that they would not receive the share of other nieces and nephews if they were taken out of the will. He could not remember whether he told Kasper that he thought it was wrong to remove Contestants from the will nor did Kasper ask why they were being removed. Combrink did not explain to Mrs. Seegers that her sister was getting only $\frac{1}{20}$th and not $\frac{1}{8}$th, although he said that he knew it. He testified that he did not request that Kasper explain the consequences of the changes to Mrs. Seegers. Kasper testified that he did not recall explaining the legal consequences of the change to Combrink, but did inform Mrs. Seegers that Contestants were removed from the will and that her sister would not get an intestate share. But, he did not explain that Contestants would take nothing under the will should her sister predecease her.

By deposition, the doctor who, in addition to Kasper, acted as a witness, testified that he was not Mrs. Seegers' doctor, but he was sure that with cancer of the liver she was on pain medication. He did not know how much, how often, or when she had had medication for pain.

■ A presumption of undue influence arises from the proof of a confidential relationship between the testator and a beneficiary, coupled with activity of the beneficiary in the preparation of the will. *Anderson v. Davis*, 208 Okla. 477, 256 P.2d 1099 (1952). It was admitted that there was a confidential relationship between

Mrs. Seegers and Combrink. It is also admitted that Combrink, a beneficiary, was the sole source of information provided to attorney Kasper for the preparation of the 1985 will. No other "heirs, devisees or legatees" under either the 1984 or 1985 will were aware that a new will had been executed.

> "A previously executed testamentary writing, conflicting with the propounded instrument, executed voluntarily and while decedent had recognized mental capacity, is an evidentiary fact from which undue influence or unsoundness of mind at the time of the later writing might be inferred, there being no explanatory facts."

*Id.* at 482, 256 P.2d at 1104, *quoting from In re Mullins' Estate*, 8 Cal.App.2d 684, 685, 47 P.2d 746, 747 (1935).

Certainly the provisions of the 1985 will represented a radical departure from two previous wills and the stated intention of Mrs. Seegers in the 1981 letter to her sister. Neither the attorney nor Combrink reported that Mrs. Seegers gave any reason for the change except that the Weingartner children were not heirs-at-law. However, such explanation does not account for leaving a niece-in-law and a niece and nephew of a brother, who were also not heirs-at-law, in the will while removing her sister's children but not increasing the sister's share.

There is evidence that the Weingartner children continued to visit and provide care and comfort to Mrs. Seeger up to six days before her death. There is evidence that she accepted from and returned to Contestants their love and devotion during this time. Therefore, the explanatory facts for such a departure from previously expressed intent are significantly absent.

We conclude that all of these facts constitute a prima facie showing of undue influence. When the legal presumption of undue influence has arisen, the burden of proof is upon the party seeking to take the benefit of the new disposition to rebut the presumption by showing that the confidential relationship had been severed or that the party making the disposition had competent and independent legal advice in the preparation of the will. *White v. Palmer*, 498 P.2d at 1406.

> Independent advice has been held to mean the testator had the benefit of conferring fully and privately about the consequences of his intended will with a person who was not only competent on such matters, but who was so disassociated from the interest of the beneficiary named there as to be in a position to advise with the testator impartially and confidentially.

*Id.*

There can also be no doubt that Combrink enjoyed an increased benefit under the new will.[3] He and his seven brothers and sisters enjoyed an increase in their inheritance from $\frac{1}{26}$th each of the estate to $\frac{1}{20}$th each, as did the other twelve remaining beneficiaries, including Contestants' mother. Furthermore, although Combrink denied that he disliked and had threatened William Weingartner that if he did not stay out of Billings he would see that Weingartner was disinherited, there is considerable testimony that there was antipathy and, perhaps, jealousy between the two nephews of Mrs. Seegers.

It being established that Combrink stood to benefit from the 1985 will, it was incumbent upon him to show a severance of the confidential relationship or independent legal advice given to the testatrix. Combrink, however, remained Mrs. Seegers' conservator up until her death, visited with her two or three times each day, directed attorney Kasper to make changes in the will, arranged for the other witness and the notary, and was actively present on the day the will was executed. The evidence thus does not establish any severance of the relationship.

---

**3.** Combrink was the legatee designated to receive all personalty in addition to a share of the residuary estate.

Kasper's preparation of the will without consulting Mrs. Seegers also falls short of the acts of "conferring fully and privately about the consequences of [her] intended will" as required by *White*. Nor was Kasper "so disassociated from the interest of [Combrink] as to advise [Mrs. Seegers] impartially and confidentially." We reiterate that Kasper was hired as Mrs. Seegers' attorney by Combrink, and that Kasper's relationship was considerable with Combrink and his family.

■ We must conclude that Combrink did not overcome the presumption of undue influence.

### IV

■ Contestants also challenge the trial court's refusal to disqualify Kasper as attorney for the estate in the will contest because they planned to call him as a witness regarding Mrs. Seegers' competency and the validity of the will. An attorney who advises a client in the will preparation may represent the estate during probate proceedings when it is likely that he may be called as a witness. Okla. Bar Association, Legal Ethics Committee, Advisory Op. 280 (1974). However, when the attorney also serves as a witness to the execution of the will and the only other witness has limited knowledge regarding the testatrix, the attorney's testimony is in defense of the will. Therefore, even though he is called by opposing counsel, he is testifying on behalf of his client, the estate. DR 5–102(A) requires a lawyer to withdraw from the conduct of the trial when he learns that he will be called as a witness on behalf of his client. 5 O.S.1981, ch. 1, app. 3.

■ We thus conclude that the court erred in failing to disqualify attorney Kasper *from the will contest proceedings.* Upon remand, the court shall so direct the attorney's disqualification during further proceedings involving the will contest. The disqualification, however, shall not extend beyond those proceedings and shall not bar the attorney from representing the estate in subsequent proceedings.

We have carefully considered the entire record and hold that the contest of the 1985 will must be sustained on the ground of undue influence. The judgment of the trial court is reversed and the case is remanded for further proceedings to determine whether Mrs. Seegers was in fact under a conservatorship and whether the estate should pass under the 1984 will, the 1981 will, or by intestate succession.

Reversed and remanded.

BRIGHTMIRE and RAPP, JJ., concur.